Schieffelin v. Hawkins.

SAMUEL B. SCHIEFFELIN, *and others*, *v.* RUSH C. HAWKINS, *and others*.

In cases of cross-indebtedness growing out of mutual dealings, a court of equity will always interpose to set off one debt against the other, and adjudge the balance to be the sum equitably due.

One of the cross-debtors, after the contract creating the debt had been executed, and his liability fixed, made an assignment for the benefit of his creditors. *Held*, that this did not affect the equitable right of the other to set-off his debt.

A general assignee for the benefit of creditors succeeds merely to the rights of the assignor. He is not, in respect to the property transferred, a bona fide holder for value, but takes it as a trustee, subject to any equities which may exist between the debtor and his creditors.

An injunction to restrain the assignee from disposing of the evidence of the plaintiff's indebedness, is a necessary part of the relief sought in such an action, and a motion to vacate it was denied.

At SPECIAL Term, March, 1862.

Motion for judgment on demurrer to the complaint.

The action was brought to compel an equitable set off of cross claims arising as follows: On the 22nd of May, 1860, the defendants Duclos & Co. bought of the plaintiffs a bill of goods amounting to one thousand two hundred and fifty-three dollars and fifty-two cents, for which they gave the plaintiffs their promissory note, payable in six months. About a fortnight before the note came due, that is, on the 9th of November, 1860, the plaintiffs purchased of Duclos & Co. a bill of goods amounting to one thousand five hundred and ninety-three dollars and twenty-three cents, upon a credit of six months, the principal part of which consisted of the same goods which Duclos & Co. had purchased of the plaintiffs, and for which the note above referred to was given; and in a week afterwards, that is, on the 15th of November, 1860, Duclos & Co. made a general assignment to the defendant Hawkins for the benefit of creditors.

Schieffelin v. Hawkins.

When the assignment was made, neither of the cross demands were due. The note of Duclos & Co. fell due ten days after the assignment, while the claim against the plaintiffs did not mature until nearly six months afterwards.

When it fell due, the plaintiffs brought the present action to restrain Hawkins from assigning or disposing of it, and, as it exceeds the note in amount, that so much of it as will suffice may be set off against, and in extinguishment of, the note. The defendant Hawkins demurred to the complaint, and the plaintiffs moved for judgment on the demurrer.

DALY, F. J.—This is a case of cross indebtedness growing out of mutual dealing, and in such cases, a court of equity, especially where one of the cross debtors is insolvent, will always interpose, setting off one debt against the other, and adjudging the balance to be the sum which is equitably due, (*Lord Lanesborough* v. *Jones*, 1 P. Wms., 230; *Hawkins* v. *Freeman*, 2 Eq. Cas. Abr. 10; *Pond* v. *Smith*, 4 Con., 302; *Robbins* v. *Hawley*, 1 Monroe, 194; *Lindsay* v. *Jackson*, 2 Paige 581; Story's Eq. Jur., § 1436.)

This power existed in courts of equity before any statute of set off was passed. (Anon., 1 Mad., 215.) "Set offs were allowed," says Chief Justice Ewing, in *The State* v. *Welslead* (6 Halst., 398), " satisfying one demand by means of another, not because of the statute, but because it was incidental to the due administration of the law and flowing from the right to control suitors to such a course as is demanded by equity and justice ; . . . but this extraordinary power will be exercised only where demands are fixed and ascertained." It is not however, sufficient, that a demand is liquidated or ascertained. Before the Court will order it to be set off, it must also be due. Thus it was held by the Court of Appeals, in *Bradley* v. *Angel* (3 N. Y., 475), that a set off would not be ordered in equity where the cross demand against an insolvent was not yet due—the reason for which is obvious. The insolvent is entitled to the full period of credit, and until he is bound to pay the debt, a debt due to him cannot be set off against it. Whatever may be the effects of his insolvency, the Court cannot change the contract of the parties. But where the debt owing

Place v. McIlvain.

305; *Platt* v. *Stark*, 2 Hilton, 399.) And the acceptance of a check dated at a future day, and which consequently is not payable until that day arrives, must be regarded as having the same effect.

In *Bangs* v. *Mosher*, 23 Barb. 478, a collector of moneys, who had given a bond with sureties for the faithful performance of his duties, accounted with the obligees for certain moneys he had collected, and they took his check for the amount, payable at a future day. It was held that the sureties were discharged, the only difference between the check in that case and in this being that here it was dated as of a future day, while there it was expressly made payable at a future day, a distinction which is not material, at least in this country, in respect to its character as a negotiable instrument. If it had been shown that the check in the case had been taken merely as collateral, (*Taylor* v. *Allen*, 36 Barb. 298,) or if there had been any evidence warranting the conclusion that it was not the intention of the parties that it should operate to extend the time of payment upon the original debt, it would, of course, not have that effect; but where all that appears is that a creditor, after a note becomes due, takes from the maker a new note, a bill or a check, for the amount of it, payable at a future day, the conclusion must be that the parties have agreed to extend the time of credit upon the original note until the suppletory instrument becomes payable, and if such an agreement is founded upon a sufficient consideration, it is binding. A very slight consideration will suffice. If a note is given upon an account, or for goods sold, the demand is thereby liquidated, which is a benefit to the creditor, or if after a note is due, a new note, a bill or a check for the amount of the debt is taken from the maker payable at a future day, the creditor acquires a negotiable instrument, which may be used more beneficially than a note which is past due, and these advantages constitute a sufficient consideration to support such an agreement. *Meyers* v. *Wells*, 5 Hill, 464.

In this case, the check was sent to the plaintiffs enclosed in a letter, and the question whether there was or was not an implied agreement to give time depends upon what was communicated in the letter, and what the plaintiffs did after they received it. Nichols states in the letter that he encloses the check for the amount of the note which he refers to as then under protest.

He requests them to *keep* the check and says that *when it is paid*, he will call for the note. After this statement he continues : " If you will *accept this*, you will confer upon me a *very great favor*," closing with the suggestion, that if they had been put to any expense in consequence of their not getting the money at maturity, he would reimburse them. It is very plain what is meant by the " great favor " here referred to. It is manifestly delay—the postponement of payment for the ten days which the check had to run. It is capable of no other interpretation. Advised then by this note of what Nichols requested, what did the plaintiffs do? By their own showing, they kept the check, and immediately before it matured, deposited it in their bank for collection, expecting, as one of them testified, that it would be paid. There is no pretence on their part, and both of them were examined as witnesses, that any intimation was given to Nichols that his request would not be complied with, nor was anything further done by them, except to ask the advice of their lawyer, the nature of which was not disclosed, as it was objected to, and ruled out. The conclusion from this uncontroverted state of facts, in my judgment, must be that they acceded to the request made to them ; by their silence after the receipt of the letter, and by depositing the check in their bank for collection, they meant to and did give Nichols the additional time asked for in the payment of the debt. From such a state of facts, an implied agreement to give time is to be inferred as matter of law. The Judge charged the jury that merely retaining the custody of a check payable at a future day, sent to the holder of a note by the maker, where it is shown, either by positive testimony or by circumstances, that such retention was not intended by either party as an extension of the time of payment, and that both so understood it, would not so operate ; but that such an intention, however, must have been either *actual* or *expressed*, or the circumstances attending the receipt of the check must have been such as would fully justify the presumption that both parties so understood the act, before the intent would be regarded as having existed, and he left it to the jury to determine as to the intent which controlled the plaintiff in accepting the check, and told them that if it was retained without any intention to give time to the maker, and that until it matured

Place v. McIlvain.

they did not by any act of theirs indicate that they meant to hold it as their own property, the liability of the defendants as indorsers was not affected by it, and the plaintiffs must recover. Where a question stands doubtful upon an uncontroverted state of facts, or where, as sometimes happens, the facts will admit of either of two conclusions, the proper course is to leave the solution of the question to the jury, and their determination is controlling and final. But such was not the case here. The plaintiffs retained the check, and there was nothing on their part to show an intention that the retaining of it was not to have the effect of extending the time of payment until the check became due, nor any circumstances attending the retention of it that would warrant any such presumption, and if there was not, then there was nothing for the jury to pass upon; but the question upon the facts proved was a question of law. James K. Place testified that he never made any agreement or arrangement with Nichols in respect to the check, and that when it was received he called upon his counsel to take their advice upon the subject; but this does not affect the legal conclusion that follows from the nature of the request contained in the letter, from the plaintiffs' retaining the check and depositing it in their bank for collection.

On a trial, and especially in a case like this, where there was a conflict of evidence as to whether there was or was not an express agreement, it is always safer to leave the question to the jury under proper instructions as to the law, which the Judge did; but the difficulty in this case is that the defendants requested the Judge to charge the jury to find a verdict for the defendants upon the ground that the taking of the check of Nichols, although without any *express* promise to wait, was a suspension of the plaintiff's right to recover against him on the note, and was a discharge of the endorsers, which upon the facts of the case, I think they were entitled to, and which the Judge refused. A new trial in my judgment should be granted.

18

Farish v. Corlies.

JOHN F. FARISH *v.* JOHN B. CORLIES *and* HENRY A. BURT.

An order granting or denying a motion to open an inquest cannot be reviewed on appeal by the General Term.

The defence of usury is an unconscionable one, and the courts will not usually open a judgment obtained by default to establish it or allow the amendment of a pleading for that purpose.

Appeal by defendants from an order made at Special Term, denying a motion to open a default.

The complaint was upon a promissory note made by John B. Corlies, and endorsed by Henry A. Burt. The defendant Corlies answered, setting up that the indorsement was merely for accommodation, and that the note was taken by the plaintiff from him on a usurious consideration. The defendant Burt also set up that this indorsement was for accommodation merely, and usury, and also denied any knowledge or belief of presentment or protest. An order was obtained by the plaintiff to place the cause on the calendar for short causes for the last Friday of the December term, and the order duly served on the defendants' attorneys.

Upon the second Friday of December, being the last day of the term, the case was called, and the defendants having made default, an inquest was taken and regularly entered.

The defendants applied on affidavit, that they had believed the day to be the last Friday in December, and had a good defence on the merits to open the default. The plaintiff opposed the motion on affidavits showing Friday, the 13th, to have been the last day of the term, and also that before taking the note plaintiff had made inquiries of the defendants, and had been informed the note was good business paper.

The motion was denied, and the defendant appealed to the General Term.

Farish v. Corlies.

*Pennington, Sullivan & Harrison,* for the appellants.

I. The defendants were entitled under the order to show cause to an order to set aside the default and judgment, and to be let in to prosecute their defence on terms. (1) The fault, if any, was not that of the defendants, but wholly that of their attorneys. (2) The power of the Court to open the default was ample. (*Code*, § 174.) The power thus conferred should be liberally exercised, and as a general rule, relief has been afforded as a matter of course in all cases reasonably capable of being reduced to any of the four categories mentioned in this section. (*Allen* v. *Hackley,* 4 How. 5; *Linde* v. *Verity,* 3 How. 350; *Galutat* v. *Downs,* 1 Code R. 120; *Foster* v. *Udell,* 2 Code R. 30; *Dudley* v. *Hubbard,* 2 Code R. 70; *McGiffigan* v. *Jenkins,* 1 Barb. 31; *Grant* v. *McCaughin,* 4 How. 216; *Washburn* v. *Herrick,* 4 How. 15; *Kellogg* v. *Klock,* 2 Code R. 28; *Lawler* v. *Saratoga Ins. Co.,* 2 Code R. 114; *Raynor* v. *Clark,* 7 Barb. 581; *Litchfield* v. *Burwell,* 5 How. 341; 1 Whittaker's Prac., pp. 452 and 453.)

II. The defence of usury is not unconscionable. It is both legal and consistent with public policy, and if not to be favored, at least ought to stand on the same footing as all other legal defences. The Statutes of this State not only declare usurious contracts void, but make the taking of usury a misdemeanor punishable by fine and imprisonment. The case of *Toole* v. *Cook,* 16 How. 142, is not in point against the defendants. In that case the defence had not been actually interposed, as in this. Here were no laches on the part of the defendants. They had pursued their rights and defence diligently, and they bring themselves within the cases in which defaults have been held excusable. (2 *Abbott's N. Y. Dig.,* p. 391.) The question here is not whether a default shall be opened to let the defendants in to plead usury, but whether they having done so in good time, shall be barred from having a trial, not for any fault or laches of their own, but by reason of an honest misapprehension of their attorneys.

III. The order is appealable. It clearly affects a substantial right. It is an absolute right of a party to have a trial of an issue which he lawfully makes, where the default has been suffered from mistake, inadvertence, surprise, or excusable

neglect. It is true that the Code speaks of "discretion," but it is a sound legal discretion, governed by established rules, and not a mere caprice, of which the Code speaks.

*T. C. Buckley*, for respondents.

By THE COURT.—DALY, F. J.—The application to set aside the judgment which was regularly taken by default, was properly denied. The defence set up by the answer was usury, which, though a defence, as a matter of strict right is regarded as one of the most unconscionable, because the party setting it up not only defeats the claim for usurious interest, but in this State, secures for his own benefit, the forfeiture of the entire debt. It is distinguishable in this respect from the defence of the statute of limitation, where, if the creditor is cut off by the statutory presumption of payment from lapse of time, it is in consequence of his own negligence or the defence of bankruptcy, in which a man unable to pay his debts is, by the operation of a humane and politic statute, discharged from them, upon giving up all his property to his creditors. Our statutes, with the view of preventing the making of usurious contracts, has deprived the party who loans money at usurious interest of all remedy for recovering back the principal. It does not merely render void the contract for the payment of usury, but allows a party to retain what is not his, because it has been loaned to him upon the expectation or promise that he will pay for the use of it more than the legal rate of interest; and although it is our duty to carry out the statute efficiently where such a defence is set up, with all the consequences that attach to it, our duty in that respect does not and cannot lessen the impression we must entertain, in conscience and in morals, of the man who is not even willing to give back what he has received, when he comes before the Court, and asks at our hands a favor.

As the judgment was regularly obtained, the defendants are not entitled, as a matter of right, to have the judgment set aside; but it rests in the discretion of the Court, whether their application now to come in and defend, will or will not be granted; and where such an application has been made to the Judge sitting at the special term, and he has, in the exercise

Farish v. Corlies.

of his discretion, refused it, I should feel disposed to hold that his decision is not reversible at the general term. It was held by the Court of Errors in *Rowley* v. *VanBenthuysen*, 16 Wend. 369, that the decision of the Chancellor in refusing to vacate an order taking a bill pro confesso, and to allow a party to come in and defend, was not a proper subject of appeal, but a matter addressed to the mere discretion of the Chancellor. And it was held by the Court of Appeals in *Fort* v. *Bard*, 1 N. Y. 43, where a defendant suffered a bill to be taken as confessed against him, and then applied upon affidavit excusing his default, and claiming to have a valid defence upon the merits to set aside the default, and for leave to come in and answer, that it was not an appealable matter, but a question of practice, addressed to the discretion of the Chancellor; and that it could not become a matter of inquiry what consideration governed his mind in denying the motion, and it was therefore immaterial whether his decision was right or wrong. This case was determined after a full review of the authorities, and Chief Justice Bronson, after remarking that this rule stands as strong upon principle as upon authority, lays down the general principle in these words: "Within certain prescribed periods, a party, who has been sued either at law or in equity, has a right to appear and make his defence. It is a strict legal right of which he cannot be deprived. But when that time has expired, and his default has been taken, the legal right is at an end; and if he wishes to be heard he must ask it as a matter of grace and favor, * * * and whether his motion is granted or refused, it is final so far as relates to a court of review." There is nothing in the Code affecting the application of the principle. The general term sits as a court of review to which the words of Chief Justice Bronson are as applicable as they were to the Court of Appeals. The Code provides for the review of an order where it affects a substantial right; but a party cannot, as has been said by Mr. Townshend in his notes upon the Code, have a right to what a court has the discretion to grant or withhold. Though this would of itself, in my judgment, be sufficient reason for dismissing the appeal, I have been disposed to go further, and express my full approval of the order denying the defendant's application.

The Court in *Lovett* v. *Cowman*, 6 Hill, 226, after character-izing usury as an unconscionable defence, remarked upon the authority of numerous cases, that " if a defendant intends to rely upon it, he must take care to set it up at the proper time and in the proper way. He is not entitled to any special favor for the purpose of enabling him to bring about a forfeit-ure of the debt," though a distinction was taken in that case, which was a decision at special term, founded upon another special term decision of the same Judge, (*Allen* v. *Mapes*, 20 Wend. 633,) between relieving a defendant who had set up the defence of usury from a judgment accidentally taken against him by default, and permitting a defendant to amend a plead-ing by setting up such a defence. This decision, as Judge Bronson admits, has frequently been found fault with. It ap-pears to have been followed by Judge Parker in another special term decision, (*Grant* v. *Mc Caughin*, 4 How. 216,) where, in opening a default he refused to impose as a condition that the defendant should not plead usury. In my mind this distinc-tion, which lets in this unconscionable defence where a judg-ment taken by default is set aside, and excludes it when the favor is asked of amending a pleading, is a distinction more nice than meritorious. It is in either case a valid defence, and as both are applications made to the favor of the Court, the same healthy exercise of discretion which excludes it in the one case should be equally exercised to exclude it in the other. In *Fort* v. *Bard* supra, the Chancellor refused to open the judg-ment and allow the party to set up as a defence a violation of the restraining act without paying back the money he had actually received; and a party who asks, as a favor, that a judgment obtained against him be set aside to enable him to establish the defence of usury, without giving back what he has received, asks the Court to aid him to retain what is not his, after he has lost the legal right to insist that it is forfeited to him. This is going farther than a Court is called upon to go in giving effect to the statute against usury. It is a very severe statute, with the wisdom or policy of which we have nothing to do, and we discharge our duty when we see that it is strictly administered in cases where parties have the legal right to have its provisions applied, and we are not called upon to go beyond that. *Fulton Bank* v. *Beach*, 1 Paige, 427. The

Farish v. Corlies.

peculiar circumstances of this case furnish a good illustration of the propriety of adhering to the course of doing nothing as matter of favor to enable parties to establish such a defence, and of leaving them, in all such cases, to their strict legal right. The action on this note was not between the original parties to the usurious agreement, but the plaintiff is an innocent holder for value, who bought the note before maturity, from a note broker, upon the assurance that it was a business note, and the defendants themselves, or at least one of them, were the instruments by which he was deceived into the purchase. Accompanying the note, in the hands of the broker, was a certificate signed by, and in the handwriting of, the defendant Corlies, declaring that it was a business note, and that it would be paid at maturity, in addition to which the plaintiff took the further precaution of sending the note to the office of the other defendant Burr, at which place it was shown to a person who said it was business paper, and that the indorsement was in Burr's handwriting. After the inquiry, which was all that a prudent man could be expected to make, the plaintiff bought the note at a discount, and now, when he seeks to recover the amount of it, he is met by the objection that it is void for usury. Even in adopting the rule that a judgment by default will be set aside to let in the defence of usury, Judge Bronson in *Allen* v. *Mapes* supra, admits that the nature of such a defence may be taken into consideration upon such application under very special circumstances. The circumstances of the case render it one eminently fitted to constitute such an exception, but I think the more satisfactory course and the better rule in all application to the favor of the Court, is to shut out such a defence altogether, if the party has lost the legal right to make it. The order below is affirmed.

JOHN F. TROW *v.* THE GLEN COVE STARCH COMPANY.

A material alteration of a written contract by one of the parties to it, without the knowledge or consent of the other, not only discharges the latter from all liability upon it, but if fraudulently made, will release him also from all liability upon the consideration for which it was made.

Where the alteration was made under a mistaken sense of right, or by a stranger, without the knowledge of the party interested, the latter will not be precluded from recovering upon the original consideration. But in such a case, it is incumbent upon the interested party to absolve himself from all suspicion of any privity or knowledge of the fraudulent act.

The plaintiff's agent procured a written contract or order from the defendants for the insertion of the defendants' advertisement in the plaintiff's Commercial Register, at a certain fixed sum named therein. The plaintiff having refused to accept the order at the sum named therein, the agent fraudulently and without the knowledge of the defendants, altered the sum named to a larger sum, and, as thus altered, the plaintiff accepted the order and inserted the advertisement. In an action for work, labor, etc., to recover the price first named in the contract,—*Held*, that it must appear affirmatively on the trial, that such fraudulent alteration was not made with the knowledge or consent of the plaintiff, and, having failed to establish that fact, the complaint was properly dismissed.

Appeal by the plaintiff from a judgment of the First District Court, dismissing the complaint.

The action was brought by the proprietor of the New York City Directory, to recover the price of the insertion of two business advertisements in the Commercial Register annexed to his Directory, one for thirty-five dollars, and the other for two dollars and a half. The complaint was in form for work and labor done by special agreement for thirty-seven dollars and a half, alleging non-payment, and claiming judgment for that amount. The grounds of the defence, and upon which the justice dismissed the complaint, are fully stated in the opinion of the Court.

*R. P. Lee* for appellant.

——— ——— for respondent.

BY THE COURT.—DALY, F. J.—The order signed by Duryea was the written contract by which the defendants became

bound to pay thirty-five dollars for the insertion of their adver-
tisement in the Directory, and any material alteration of the
instrument afterwards, without their consent, discharged the
defendants from all liability upon the written contract; and if
the alteration was fraudulently made at the instance or with
the knowledge of the party to be benefited by the contract, it
released the defendant also from all liability upon the consider-
ation which may have been given in pursuance of it. (*Newell*
v. *Mayberry*, 3 Leigh, 250; *Mills* v. *Starr*, 2 Bailey, 359; *Al-
derson* v. *Langdale*, 3 Barn. and Ad., 660; *Clute* v. *Small*,
17 Wend., 242; *Chitty on Contracts*, 783, 786.) "No
man," said Lord Kenyon, referring to this general princi-
ple in *Master* v. *Miller* (4 Term R., 329), " shall be permitted
to take the chance of committing a fraud without running any
risk of losing by the event when it is detected." If the altera-
tion, however, is made under a mistaken sense of right, or by a
stranger, without the knowledge of the party interested, the
latter will not, in such a case, be precluded from recovering on
the original consideration. (*Atkinson* v. *Handon*, 2 Ad. and
Ellis, 628; *Sutton* v. *Toomer*, 7 Barn. and Cres., 416; *Jack-
son* v. *Malin*, 15 Johns., 297; 1 Wend., 658.)

Bigelow, an agent employed by the plaintiff to solicit adver-
tisements for the Commercial Register accompanying Trow's
New York City Directory, called at the office of the defendant
to obtain their advertisement. He saw Mr. Duryea, the sec-
retary of the defendant; and there is a direct conflict between
him and Duryea as to what took place at that interview, as
well as to what occurred with the knowledge of Duryea after-
wards. We must assume from the judgment the Justice ren-
dered, that he discredited Bigelow in every particular in which
he was contradicted by Duryea, and must regard the state-
ment of Duryea as containing the correct version of what oc-
curred. Duryea, on a second interview, agreed to give thirty-
five dollars for the insertion of the advertisement, to which
proposition Bigelow assented, and presented a printed order on
H. Wilson, the compiler of the Directory, requesting the in-
sertion of the advertisement, and agreeing to pay thirty-five
dollars for it, which Duryea signed, as agent of the company;
Bigelow, however, remarking that he could not insert it for
thirty-five dollars without speaking to Wilson; that he would

speak to him and come back. Bigelow says that he saw Wilson, and that he refused to take the advertisement at that price; that he then called upon Duryea, and told him that Wilson would not insert it for less than forty dollars, and that he made the alteration from thirty-five to forty dollars with Duryea's consent. This Duryea absolutely denied, and testified that he did not see the order again, or know anything about the alteration of it, until after the publication of the Directory, when a bill was presented to him for forty dollars.

As the defendants intended to have their advertisement inserted and to pay thirty-five dollars for it, and as they have had the benefit of that service, they should not be absolved from paying what they agreed to pay, unless the plaintiff is chargeable with the fraudulent alteration made by his agent. Independent of the discredit thrown upon the whole testimony of Bigelow by the finding of the Justice, the alteration itself bears intrinsic marks of having been made fraudulently. In the printed order the words "two dollars and fifty cents" were obliterated by a line drawn across them, and the words "thirty-five dollars" were written in the margin below. Afterwards, the words "thirty-five dollars" were carefully erased, and the words "forty dollars" were written over the blank left by the erasure; the whole being done so ingeniously and skilfully, without any blot or change from the general character of the writing in the margin, that the fact that the alteration had been made would not be apparent upon a general observation or reading of the instrument, but would be manifest only upon the attention being fixed upon the part where the change had been made and the figures thirty-five dollars in the margin were transformed into forty with like ingenuity and care. This instrument was in the plaintiff's possession, and was indorsed by him, and if he was innocent of any knowledge that an alteration had been made, or if advised by the agent that made it that it had been done with the consent of the agent of the defendants, I think he should have appeared in the cause as a witness, and have established the fact by his testimony. It was an alteration ostensibly for his benefit, and it was incumbent upon him, under the circumstances, to absolve himself from all suspicion of any privity with or knowledge of the fraudulent act. If it had appeared that it was the dishonest act of the agent

---

Reynolds v. Kelly.

---

alone, done with a view of securing a commission upon the advertisement obtained, or from any other motive, without any participation in it or knowledge of it on the part of the principal, then, although the plaintiff could not sue upon the altered instrument as a valid contract in writing, he would not, in my judgment, have been precluded from maintaining an action to recover for the service rendered at the price which the defendant had agreed to pay; but as nothing of this kind was shown, I think the Justice did right in dismissing his complaint.

The plaintiff did not rest upon the assumption in the answer that a card or advertisement of the defendant had been published in the Directory during the year 1860, and very properly, as the complaint merely averred in general terms that the plaintiff had published the business advertisement of the defendant in the Directory of that year, without specifying or distinguishing any one in particular, and it was doubtful therefore to which of the two advertisements the admission applied. The plaintiff accordingly gave evidence to show that the advertisement for which two dollars and a half was claimed had been published at the defendants' request; the defendant's agent swore that the bill had been presented and paid, and as the plaintiff gave no evidence to the contrary, the Justice found as he was entitled to do upon the evidence, that this amount had been paid. The judgment should be affirmed.

Judgment affirmed.

---

JOSIAH T. REYNOLDS *v.* JOHN KELLY, *Sheriff*, &c.

The answer of a witness that the consideration of a sale of chattels was a sum of money and "one hundred acres of land," is not open to objection on the ground that it gives the contents of a deed of land not produced on the trial.

The rule that questions arising upon conflicting evidence must be left to the tribunal that hears the testimony, and sees the witnesses upon the stand, is indexible, and the appellate court cannot invade it merely because it thinks the case warranted a different conclusion.

Appeal by the defendant from a judgment of the Marine Court at General Term.

The facts of the case, and the grounds of appeal, are fully stated in the opinion of the Court.

*A. J. Vanderpoel* for appellant. .
*Sickles & Cushing* for respondent.

By THE COURT.—HILTON, J.—The plaintiff claims to be the owner of a certain stock of liquors taken by the defendant under an attachment issued against the property of one Jesse Johnson. The liquors appear to have originally belonged to Johnson, but now, by a bill of sale transferred by him, to the plaintiff. The transfer had been negotiated by a brother of the plaintiff, who, upon being examined as a witness, was inquired of respecting the consideration paid at the time of the purchase, and the only question this appeal presents is, whether the inquiry was properly made ; and this is raised by the objection interposed to the following question put by the Court, viz. :

" What was the consideration for the sale ?" and the answer allowed to be given by the witness thereto, which was "the indebtedness of one hundred and twenty-five dollars due for moneys loaned and one hundred acres of land," the objection seeming to be founded on the idea that the witness was inquired of, and allowed to testify, respecting the contents of a deed without its being produced.

This view is clearly a mistaken one. The question put was undoubtedly proper. Without it the plaintiff would have been deprived of the power to show that the sale from Johnson had any validity as to his creditors, as the transfer could not have been upheld unless a valuable consideration for it had been shown, and as that being established, the presumption of good faith at once attached.

Nor was the answer open to the objection stated. An answer that the consideration was a sum of money and one hundred acres of land, does not give the contents of a writing in any objectionable sense. It was in this instance merely giving a direct response to a question properly put, and to say that it should have been excluded because the deed conveying

Mcllhenny v. Wasson.

the land was not produced, would in effect deny to a party in very many instances the privilege of proving ownership of property purchased for a vendor in embarrassed circumstances when creditors sought to avoid the sale. It is not usually in the power of a purchaser in such a case to produce a deed which he has delivered to a vendor as the consideration for the transfer, and I may add, that the fact of his having it ready to produce, unaccompanied by clear proof that he had obtained it for the purposes of the trial alone, would be a circumstance so suspicious that a Court or jury might well hesitate to uphold a transaction founded upon a consideration so within the control of the purchaser that he might at his pleasure repossess himself of it.

I regret the necessity which in this instance leads me to the conclusion that the judgment must be affirmed ; because if the case as printed correctly presents the whole of the testimony given at the trial, the proof of the plaintiff's ownership of the property and its value was so suspicious and doubtful, that a judgment in the defendant's favor would not have been disturbed. But the rule that questions arising upon conflicting evidence should be left to the tribunal that hears the testimony and sees the witness upon the stand is inflexible, and we cannot invade it merely because we think the case would seem to have warranted a different conclusion from the one arrived at.

Judgment affirmed.

JOHN McILHENNY v. ELIAS WASSON.

The appeal from a district court of the city of New York is to the General Term of the Court of Common Pleas, in that city, and the provision of the act of 1862, authorizing a re-trial of cases tried in a Justices court in a County court, does not apply to the city of New York.

Appeal by the defendant from a judgment of the Eighth District Court.

The plaintiff recovered a judgment in the Eighth District Court of the City of New York against the defendant, for $175 13, on the 10th day of July, 1862.

The appellant, being advised by his counsel that the Laws of 1862, page 853, authorized him to appeal to the trial term of the Court of Common Pleas of the County of New York, did so appeal, and noticed the cause for trial, at a trial term of the Court of Common Pleas. In the mean time the attorney for the respondent noticed the appeal for argument at the General Term of the Court of Common Pleas, and placed the same on the calendar of said General Term.

The appellant now objected to the jurisdiction of the General Term to hear said appeal, and insisted that the cause be struck from the calendar, and that the same be tried at the trial term of the Common Pleas.

*Hill, Courtney & Monell*, for the appellants.

I. The *whole* of § 352 of the Code remains as it was, and specifies how appeals from the judgment of the Court may be taken, and to what Court, and then provides—On such appeal, when the amount of the claim or claims of either party litigated in the Court below exceed fifty dollars, or when in an action to recover the value of personal property, &c., a new trial shall be had in the County Court, &c.

II. Section 364 is amended so as to read as follows—" If a return be made, and the appeal is from a judgment where a new trial may not be had, (that is, when the judgment is not over fifty dollars,) it may be brought to a hearing at a General Term of the Appellant Court, &c.; but if the appeal is from a judgment where a new trial may be had, it may be brought to a hearing or trial at any term of the County Court at which a petit jury shall be summoned."

III. Every Judge of the Court of Common Pleas is a County Judge, and every trial term of the Court of Common Pleas is a County Court, and hence the trial term of the Court of Common Pleas is a County Court under the meaning of section 25.

McIlhenny v. Wasson.

IV. The *intention* of the Legislature was to permit a party feeling aggrieved by the action of a Justice of·the Peace to have the case *retried* in another Court. There is nothing novel in the amendment. It restores the old statute, which will be found in Second Vol., 3d ed. R. S. page 357.

V. Independent of the considerations above stated, the language of the amendment, by the 23d Section of the Laws of 1862, expressly directs the appeal to the Court of Common Pleas, and not to the general term of the Court.

The Legislature, on referring to the General Term of the Appellate Court, makes use of the word "General" in cases where no new trial can be had, and in other cases where the retrial can be had, the word "General" is studiously omitted.

VI. Sections 364 and 366 of the Code are so amended by the Act of 1862 as to deprive this Court from giving judgment on an appeal in any other manner than is therein provided, viz.: if the amount litigated in the Court below be under fifty dollars, then the appeal is to be heard at the General term, but if over that amount, then at the trial term of the Court. If this Court decline to adopt the proceedings on appeal as provided for by the Act of 1862, then it can entertain no jurisdiction of appeals in any case—at all events as to none where the amount is over fifty dollars.

By the Court.—Hilton, J.—The simple question presented to us for determination upon this appeal, is, whether under the provisions of Chap. 5 of Title 11, of the Code as amended April 23, 1862, a new trial must be had in this Court in all cases of appeal from the Marine and District Courts where there has been an issue joined and the amount involved exceeds fifty dollars.

Section 352 of the title referred to, and upon the construction of which this question depends, as amended is in substance as follows.

When a judgment has been rendered by the General Term of the Marine Court, or by a Justice of the District or Justices' Courts of this city, the appeal shall be to this Court, and the appeal from the Marine Court must, like that from the District

Courts, be taken within twenty days after the judgment.   In the city of Buffalo the appeals from the Courts of Justice of that city must be to the Superior Court therein.

When the judgment has been rendered by any of the other Courts enumerated in the preceding section (351), that is, Justices' Courts of other cities than New York and Buffalo, the Municipal Court of the city of Brooklyn and Courts of Justices of the Peace throughout the State, the appeal must be to the County Court of the County.   And on *such* appeals, where issue has been joined and the amount involved exceeds fifty dollars, a new trial shall be had in such County Court.

It seems to us quite plain that the expression "such appeal" in the connection in which it is used in this section, refers to the appeal which is required to be taken to the County Court, *eo nomine*; and has no relation to the appeals which must be taken to this Court, and to the Superior Court of the city of Buffalo.

The remaining sections of the title, which were amended at the same time, are in no sense repugnant to this construction, but on the contrary fully harmonize with it.

Therefore in all appeals to this Court from the Marine and District Courts, the former practice still prevails unaffected by amendments of 1862, except so far as the costs therein are regulated by the amendment to section 371.

Judgment affirmed.

# SAMUEL B. SCHIEFFELIN, *and others, v.* RUSH C. HAWKINS, *and others.*

In cases of cross-indebtedness growing out of mutual dealings, a court of equity will always interpose to set off one debt against the other, and adjudge the balance to be the sum equitably due.

One of the cross-debtors, after the contract creating the debt had been executed, and his liability fixed, made an assignment for the benefit of his creditors. *Held,* that this did not affect the equitable right of the other to set-off his debt.

A general assignee for the benefit of creditors succeeds merely to the rights of the assignor. He is not, in respect to the property transferred, a bona fide holder for value, but takes it as a trustee, subject to any equities which may exist between the debtor and his creditors.

An injunction to restrain the assignee from disposing of the evidence of the plaintiff's indebedness, is a necessary part of the relief sought in such an action, and a motion to vacate it was denied.

At SPECIAL Term, March, 1862.

Motion for judgment on demurrer to the complaint.

The action was brought to compel an equitable set off of cross claims arising as follows : On the 22nd of May, 1860, the defendants Duclos & Co. bought of the plaintiffs a bill of goods amounting to one thousand two hundred and fifty-three dollars and fifty-two cents, for which they gave the plaintiffs their promissory note, payable in six months. About a fortnight before the note came due, that is, on the 9th of November, 1860, the plaintiffs purchased of Duclos & Co. a bill of goods amounting to one thousand five hundred and ninety-three dollars and twenty-three cents, upon a credit of six months, the principal part of which consisted of the same goods which Duclos & Co. had purchased of the plaintiffs, and for which the note above referred to was given; and in a week afterwards, that is, on the 15th of November, 1860, Duclos & Co. made a general assignment to the defendant Hawkins for the benefit of creditors.

19

When the assignment was made, neither of the cross demands were due. The note of Duclos & Co. fell due ten days after the assignment, while the claim against the plaintiffs did not mature until nearly six months afterwards.

When it fell due, the plaintiffs brought the present action to restrain Hawkins from assigning or disposing of it, and, as it exceeds the note in amount, that so much of it as will suffice may be set off against, and in extinguishment of, the note. The defendant Hawkins demurred to the complaint, and the plaintiffs moved for judgment on the demurrer.

DALY, F. J.—This is a case of cross indebtedness growing out of mutual dealing, and in such cases, a court of equity, especially where one of the cross debtors is insolvent, will always interpose, setting off one debt against the other, and adjudging the balance to be the sum which is equitably due, (*Lord Lanesborough* v. *Jones*, 1 P. Wms., 230; *Hawkins* v. *Freeman*, 2 Eq. Cas. Abr. 10; *Pond* v. *Smith*, 4 Con., 302; *Robbins* v. *Hawley*, 1 Monroe, 194; *Lindsay* v. *Jackson*, 2 Paige 581; Story's Eq. Jur., § 1436.)

This power existed in courts of equity before any statute of set off was passed. (Anon., 1 Mad., 215.) " Set offs were allowed," says Chief Justice Ewing, in *The State* v. *Welslead* (6 Halst., 398), " satisfying one demand by means of another, not because of the statute, but because it was incidental to the due administration of the law and flowing from the right to control suitors to such a course as is demanded by equity and justice; . . . but this extraordinary power will be exercised only where demands are fixed and ascertained." It is not however, sufficient, that a demand is liquidated or ascertained. Before the Court will order it to be set off, it must also be due. Thus it was held by the Court of Appeals, in *Bradley* v. *Angel* (3 N. Y., 475), that a set off would not be ordered in equity where the cross demand against an insolvent was not yet due—the reason for which is obvious. The insolvent is entitled to the full period of credit, and until he is bound to pay the debt, a debt due to him cannot be set off against it. Whatever may be the effects of his insolvency, the Court cannot change the contract of the parties. But where the debt owing

to the insolvent has become due, it is not necessary to wait until the cross claim is payable, as the continuance of the credit in that case is a matter solely for the benefit of the other party, which he may, if he think proper, waive. (*Lindsay* v. *Jackson*, 2 Paige, 581.)

In the present case, neither of the cross demands were due when Duclos & Co. made their assignment, though the amounts respectively owing by each were then ascertained and fixed. Now, however, that they are due, and that this application is made to the equitable power of the Court to set off the one against the other, the question arises whether the right which would otherwise exist has been lost by the transfer of the claim against the plaintiffs to Hawkins.

In *Chance* v. *Isaacs* (5 Paige, 592,) Chancellor Walworth declared that when a demand is not due at the time of an assignment, but will become due before the cross demand, an equitable right of set off exists, of which it would be unconscientious to deprive the other party by assigning the claim against him to an assignee for the benefit of creditors; but the point arose incidentally, and was not essential to the decision of the case.

The question, however, came up directly before the Superior Court, in *Keep* v. *Lord*, (2 Duer, 78), a case that differed from the present only in the circumstance that the cross demands there were independent and disconnected, while here they grew out of mutual dealings, a distinction which is not material, it being well settled that the insolvency of one of the cross debtors, even where demands are independent and disconnected, is a sufficient ground in equity for compelling a set off. (*Merritt* v. *Fowler*, 6 Dana, 306; *Robbins* v. *Hawley*, 1 Monroe, 194; *Pond* v. *Smith*, 4 Con., 302; *Simpson* v. *Hart*; 14 Johns., 63; *Lindsay* v. *Jackson*, 2 Paige, 581; *Rawson* v. *Samuels*, 1 Craig and Phillip, 161.)

In this case of *Keep* v. *Lord*, the opinion of Chancellor Walworth was considered and dissented from; and it was there held that as the claim against the insolvent was not due when he made his assignment for the benefit of creditors, that the assignee took the cross demand divested of any right on the part of the solvent debtor to set off against it the claim owing

by the insolvent when that claim became due. The ground taken by the Court was, that the right of set off must attach at the time when the assignment is made; that it did not attach then, as neither of the claims were due, and could not rise afterwards when they did become due as the claim against the plaintiff had passed before that event to the assignee. A similar decision growing out of the assignment in the present case was pronounced by Mr. Justice Hoffman, sitting at the special term.

In *Maas* v. *Goodman* (2 Hilt., 275), the general term of this Court, reversing a decision at the special term, dissented from the view taken by the Superior Court in *Keep* v. *Lord*, and held in an action brought by an assignee for the benefit of creditors to recover for a bill of goods sold by the insolvent before his assignment to the defendants, that the defendants were entitled to set off a note made by the insolvent, and held by them when the bill of goods was sold to them, though the note was not due or payable until several months after the assignment. In that case, as in this, the debt owing by the insolvent became due before the cross demand.

Since that decision was made, the case of *Myers* v. *Davis* (22 N. Y., 489) has been decided in the Court of Appeals, a case relied upon by the defendant Hawkins as in conflict with our decision in *Maas* v. *Goodman*, and as sustaining the decision of the Superior Court in *Keep* v. *Lord*. Upon examining that case, however, it will be found that it does not affect or touch the question now under consideration. In that case an action was brought by an assignee for the benefit of creditors, to recover for goods sold by the insolvents to the defendant before their assignment; and it was held that the defendant could not set off against the debt a claim for articles ordered by the insolvent of the defendant before their assignment, but which were not manufactured by him until several months afterwards. In this case, the debt proposed to be set off had not been created when the assignment was made. The contract was then executory, and one which the defendant was under no obligation to perform after the parties to it had become insolvent. If he saw fit after that event to go on and execute the order, it gave him undoubtedly a claim against the insolvents, but

Schieffelin v. Hawkins.

none against the estate which they had previously assigned. The claim against the defendant was a subsisting liability when the assignment was made. It was for goods sold and delivered to him by the insolvent, and no right of set off attached to it, as no liability on the part of the insolvents had then grown out of the performance of any contract on the part of the defendant.

While anything remains to be done under an executory contract, it cannot be the subject of a set off. It must be executed, or all that the party is required to do must be done, before it can be enforced for any purpose, whether by way of set off or otherwise. The equitable right of set off attaches only in cases where the respective liabilities have been fully ascertained, liquidated and fixed. This was not the case in *Myers* v. *Davis*, but it was in the present case. When the assignment was made here, each of the cross debtors had received the consideration upon which his obligation was founded. The amounts respectively due were ascertained, and the day of payment fixed, and in the order of payment the plaintiffs were entitled to receive from the insolvents the amount of the note in their hands long before they could be called upon to pay the note given by them. The reciprocal obligations having had their origin in mutual credits, and the consideration for each having been fully received, an equitable right of set off existed, which the plaintiffs had the right to compel as soon as the note of Duclos & Co. was past due, and which could be defeated only by a transfer of the plaintiffs' note to a bona fide holder.

The assignee in this case was not a bona fide holder; and the error of the Superior Court, in *Keep* v. *Lord*, as pointed out by Judge Brady, in *Maas* v. *Goodman*, consisted in applying to a general assignee for the benefit of creditors a rule that is applicable only when an assignment is made to an insolvent purchaser for value. *Brown* v. *Heathcote*, (1 Atk., 162). That the court did not consider that there was any distinction is apparent from a case reported in the same volume (*Hicks* v. *McGrorty*, 2 Duer, 295,) in which it was decided that an assignee for the benefit of creditors has as against a set off all the protection that is afforded to an assignee for value. No authority is cited in the opinion of the court in support of this decision, nor is any referred to upon the argument, except the case

of *Jackson* v. *Bloodgood* (1 Johns. Cas., 51), a case that by no means warrants any such conclusion ; all that the Court held in that case being, that the defendant could not set off against his own debt a note of the insolvent purchased after it was due, and the defendant had constructive notice that the insolvent had made a general assignment to the plaintiff for .the benefit of creditors ; while on the contrary, there are a number of· cases in this State, the conclusion to be adduced from which is that such an assignee is not to be regarded as a purchaser for value, and is in no better position in enforcing choses in action, transferred by the assignment, then the insolvent would be. (*Clason* v. *Morris*, 10 Johns., 525 ; *Curtis* v. *Leavitt*, 15 N. Y., 195 ; *Van Heusen* v. *Radcliffe*, 17 Id., 580 ; *Griffin* v. *Marquardt*, Ib., 28 ; *Leger* v. *Bonaffe*, 2 Barb., 475 ; *Warren* v. ·*Fenn*, 28 Ib., 333 ; *Marine Fire Ins. Bank of Georgia* v. *Jauncy*, Ib., 486 ; *Matter of Howe*, 1 Paige, 125 ; ·*Mead* v. *Philips*, 1 Sandf. ch., 83 ; *Murry* v. *Lyburn*, 1 Johns. ch., 443.)

A general assignee for the benefit of creditors succeeds merely to the rights of the assignor. He is not, in respect to the property transferred, a bona fide holder for value, but takes it simply as a trustee, subject to any equities which may exist between the debtor and his creditors. It is an appropriation by the debtor of his property, in trust, for the payment of his debt, in the order and manner specified; an act by which he divests himself of it for the time being, without altogether parting with his interest in it ; for, should any property or its proceeds remain after the trust is executed, it returns to him.

In *Van Waggener* v. *The Paterson Gas-light Co.* (3 Zabriskie, N. J. 283), it was said that the general doctrine is, that a debtor is entitled to the same allowance by way of set offs against the claim of an assignee for the benefit of creditors that he would have against the insolvent himself. .Assignments of this nature transfer the rights of the insolvent to the assignee, precisely in the same condition as he possessed them. In *Trow* v. *Ferguson*, (11 Ala. 885) the Court says ; " The general assignee of a debtor in failing circumstances stands precisely in the same condition as the debtor himself, " and in *Knowles* v. *Lord*, (4 Wharton, 507), " Such an assignment does not place· the as-

Schieffelin v. Hawkins.

signee in any different situation in point of equity than the assignor himself;" and in an early case (*Redoubt* v. *Brough*, Cowp., 134) it was declared that, as respects the right of set off the assignee occupied the same position as the bankrupt. Assignments of this nature have been aptly termed by Chief Justice Gibson, "a bankrupt law made by the debtor for the benefit of himself" (5 Rawle, 321); and viewed in this light, the principle laid down in the English Courts of equity, in assignments to commissioners in bankruptcy, is applicable— that assignees of this character, in the language of Lord Hardwicke, "though they are trustees for creditors, yet stand in the place of the bankrupt, and can take in no better manner than he could." (*Brown* v. *Heathcote*, 1 Atk. 162.) "They are not," says Lord Eldon in *Mitford* v. *Mitford* (9 Ves., 100), "considered purchasers for valuable consideration. The rights of the bankrupt pass precisely in the same plight and condition in which he possessed them. Even where a complete legal title vests in them, and there is no notice of any equity affecting it, they take, subject to whatever equity the bankrupt was entitled to."

There was, as I have already stated, an ascertained and subsisting equity between the plaintiffs and Duclos & Co., when they made their assignment, which was not, and could not be, affected by that instrument. The defendant Hawkins, as their assignee, stands precisely in the same condition as they did, and now that their note is due and payable, the plaintiffs are entitled to have it set off against the debt owing by them.

The demurrer is therefore overruled.

All the Judges concurred in the decision.

GENERAL Term, January, 1863.

Subsequently, a motion was made in this case to vacate an injunction which had been granted to restrain the assignee, Hawkins, from disposing of the note of the plaintiffs. The motion was denied, and the defendant Hawkins appealed to the General Term.

*Dexter A. Hawkins*, for appellant.

*E. & E. F. Brown*, for respondents.

BY THE COURT.—DALY, F. J.—I have already expressed my views upon this case at Special Term in overruling the de-

murrer to the complaint, and have nothing to add to the reasons I then gave, in support of the conclusions that the plaintiffs were entitled to the equitable relief which they seek in the action. If the action is maintainable, the injunction to restrain Hawkins from disposing of the note is a necessary part of the relief sought, and the motion to vacate it was therefore properly denied.

The order appealed from should be affirmed with costs.