By the Court—Bosworth, Ch. J.
The Referee has found that Henry C. Goodwin, the plaintiff’s assignor, and the defendants, were partners, under the name of Foot & Cole, from the 1st of October, 1855, to the 1st of April, 1856. The Referee has also found that the sum of $1,415.79 was due, at the date of his report, from the defendants to the plaintiff, upon a just statement of the accounts between the partners. The defendants do not seek'to disturb the decision that Goodwin and Foot and Cole were partners. o
They complain that two counterclaims which they set up were rejected, and that they were not allowed certain credits; and to obtain a correction of the errors alleged in these respects, they have appealed from the judgment entered on the report of the Referee.
*116 As to the items of credit claimed by the appellants; and,
First. The item of $249.94.
Of the items composing this aggregate, three, viz., $61.22, $68.80, and $28, were allowed: the total is $158.02, and one-quarter is $38.25. Proof of these items was furnished beyond the fact that they were charged to profit and loss after the firm was dissolved. Of the remaining items composing such aggregate, no evidence, beyond that fact, was furnished. The making of such entries, after the firm was dissolved, is not, of itself, and without further proof, prima facie evidence that they are items of loss properly chargeable to the firm.
Second. The item of $318.73, being one-quarter of balance due from Z. Reuwee, December 24, 1856. The balance then due was $1,274.93. There is nothing in the evidence tending to show that this balance arose from, or is affected by, sales made between the 1st of October, 1855, and the 1st of April, 1856, unless the facts, that the balance due from Reuwee October 1, 1855, (when Goodwin became a partner,) was $8,536.47, and the balance due when Goodwin left was $1,274.93, tend to show it. This is not enough to demonstrate that the Referee erred.
Third. The item of $139.59, being one-quarter of an account against the Oatskill Mill for $558.35.
This account commenced in June, 1855, and ended January 1, 1857. While Goodwin was in the concern, the firm sold to the amount of $1,526.92, and received $1,969.48. The amount of debits, or of credits, subsequent té the 1st of April, 1856, and prior to January 1, 1857, does ntitl appear. Without the dates of the several items of debt and credit, subsequent to the 1st of October, 1855, we cannot see clearly that the Referee erred in rejecting this item.
Fourth. The item of $91.23, one-quarter of balance of $364. 92, alleged to be due from John S. Dye. It appears that, on the 29th of December, 1855, Dye confessed a judgment for $1,619, as security for what he then owed Foot & Cole. It does not appear that the $364.92 was not included in it. And it does appear that, on the 10th of September, 1857, the defendants settled with Dye all demands to that date, in full, and gave a receipt to that effect. This is sufficient to justify the disallowance of this claim.
*117 Fifth. The item of $176.06, amount of Porter’s note, forming part of the capital contributed by Goodwin.
It was proved that an execution, issued on a judgment recovered by Foot & Cole on this note, was returned satisfied. The presumption is that the judgment was recovered, and that the money collected on the execution was received by Foot & Cole. The claim to be allowed this item was properly rejected.
Sixth. The item, “ Bills recv. Dye’s notes, $1,303.50.”
The ground on which the Referee placed his rejection of this claim is tenable, and is alone sufficient to uphold his decision. If he believed the testimony of Goodwin as to the origin of the notes and the circumstances under which they were made, the claim might also have been rejected on other grounds.
The Referee has not found whether Goodwin induced Foot & Cole, by false and fraudulent representations, to take these notes. If he might have found that they made a sale to Goodwin, as purchaser and principal, and took these notes by reason of his fraudulent representations, it may be true that the mere fact that they canceled and surrendered the notes for a valuable consideration would not be a bar to this claim, although they were canceled for less than their face, if all was obtained for them that they were worth.
But, if we assume that, on such a state of facts, they might retain the notes and sue Goodwin for the damages sustained by the fraud, yet, as against his assignee of the balance due on an accounting between the partners, it is not obvious on what ground they could set up, as a counterclaim, a cause of action against Goodwin growing out of his fraudulent representations in a transaction disconnected from the partnership business. It is not a cause of action against "the present plaintiff. That objection is insuperable, and makes it impossible for the defendants to recover on that counterclaim—assuming the fact to be correctly found, that they have canceled and surrendered the notes to Dye for a valuable consideration.
With that fact existing, however the other facts might properly be found, their only remedy (if any) is an action against Goodwin for the damages caused by his fraud; and that cannot be made a counterclaim against Boyd, the present plaintiff.
Seventh. “ The debt against the Painsville Mill, $835.04.”
*118 The finding of the Referee, that this debt was a debt owing to the firm by the person running the mills, and not by Goodwin personally, is, in our opinion, warranted by the evidence. , We are not justified in holding that it is contrary to the evidence. The Referee has charged Goodwin, and Boyd as his assignee, with one-fourth of this claim. This is conceded to be correct, provided it be assumed, or must be held, that Goodwin is not liable for the debt as principal.
These views dispose of all questions made by the appellants on the appeal, except those connected with two exceptions taken during the progress of the trial,, and which two are the only exceptions taken during the trial to which our attention was directed on the argument, or which are noticed in the points of the appellants.
The exception taken to certain evidence of Goodwin, as being “ hearsay,” may be dismissed with the remark that the evidence objected to could not possibly have prejudiced the defendants. It related to the question whether a note dated October 8, 1855, for $500, made by McGee and Mitchell, had been paid. This note had been contributed by and credited to Goodwin as capital.
The witness on behalf of the defendants testified that $200 only of its amount had been paid; that it was compromised for forty cents on the dollar, the makers having failed. This was the fact, as the defendants sought to prove it. The Referee charged against Goodwin the $300, by reason of the failure of McGee and Mitchell, and the acceptance of $200 from them as a compromise of the $500.
Hence, it is evident that the defendants had all the allowance made to them which, by any possibility, could have been made, if no testimony had been given by Goodwin in respect to this item.
The only remaining exception was taken to the decision, that testimony in relation to the purchase of the Pittstown Mill was impertinent “ as the matter is not specified as a counterclaim in the pleadings.”
The defendants were apparently attempting to prove that this purchase was a partnership transaction. If it was, it was a proper item to be established, and the defendants were entitled to be *119 allowed such sum as would be just with reference to its actual results.
The direct examination of Cole tended to show that the purchase was on account of the firm of Foot & Cole, while Goodwin ■was a member of it. His cross-examination had weakened somewhat the force of his evidence on the direct examination, when the Referee (apparently) arrested the examination and excluded the evidence in relation to this claim, on the ground that it was impertinent; and impertinent because the claim had not been set up in the pleadings as a counterclaim.
If the appellants were precluded, on this ground, from giving evidence to establish the fact that this mill was purchased for the firm with the assent of all of its members, the decision was erroneous.
In the view which we take of the decision made, the Referee interposed while Cole was under examination in respect to this item, and expressed the opinion and decided that all testimony on this point was impertinent, because the matter was not pleaded as a counterclaim. To this decision the defendants excepted.
It is indeed true that a full investigation of the matter may result in proof that the purchase was not made for and on account of the firm.
But that consideration does not meet the difficulty created by the Referee’s decision. That decision precluded the defendants from proving (however satisfactory the evidence which they were prepared and desired to give in that behalf) that it was a co-partnership purchase, and that they were entitled to a deduction by reason of it. It precluded them from proving these facts on the ground that the matter was not pleaded as a counterclaim.
It is not a counterclaim, but is one of the several partnership transactions, if the supposed facts do in truth exist.
But we think it unnecessary to grant a new trial, if the plaintiff will consent to a deduction of the whole allowance claimed by reason of this matter.
The direct examination of Charles Cole on this point presents the precise claim which the defendants make in this behalf, and its nature and extent. His testimony is that “ there are debts unpaid contracted when Goodwin was with us ; we bought for $1,500 a mill at Pittstown, FT. Y., on which was a mortgage of *120 $3,000, on which we paid 10 per cent, the balance” ($1,350) “is still due and the parties claim payment of us; we have been unable to sell this property, although we have made great efforts; it is now in the hands of a Receiver and I have been notified that it will be sold on our account.”
This is the whole evidence given in relation to the nature and extent of the claim. It is the only statement respecting it found in the printed Case.
The appellants’ printed points state that “ Goodwin should have been charged with one-fourth of the loss on the Pittstown Mill. This mill was purchased while Goodwin was with Foot & Cole, and at his suggestion, for $1,500, the whole of which has been lost.” * * “ The transaction entered into the accounts between the alleged partners, and the loss on it should be charged one-fourth to the plaintiff.”
The claim, as here made, in the broadest construction which can be given to the language in which it is stated, is one-fourth of $1,500 and interest from the time of the purchase. The purchase could not have been made earlier than the 1st of October, 1855, the day the partnership was formed. If, therefore, $375 with interest from that date be deducted, the defendants will be allowed the utmost they can pretend to have claimed.
Allowing this will allow more than a fair construction of the language used may be thought to claim. The 10 per cent paid down, (viz.: $150,) if the matter was deemed and treated as a partnership transaction at the time, would naturally be charged to the firm when it was paid. If that was done, they have been allowed already one-quarter of that in the accounts as kept by the partners.
So too, if the property shall sell for any sum over and above the mortgage upon it, the loss will be only the difference between that excess and $1,500.
Hence if the plaintiff, rather than submit to the delay and expenses incident to a new trial, will stipulate to deduct from the balance found by the Referee $375 and interest thereon from October 1, 1855, to the date of the report, the judgment as a judgment entered on a report for the true balance arising on such a correction, may be affirmed. In that event it will be *121 affirmed without costs of the appeal to either pprty, as it will, in substance, be affirmed in part and reversed in part.
The decision in Moffet v. Sackett, (18 N. Y. R., 522,) in our view of it, does not prevent our making this disposition of the appeal; we do not undertake to decide, upon conflicting or uncertain evidence, how much was lost by this transaction, but allow to the defendants the whole amount of their claim in this behalf.[1]
If the plaintiff does not choose to make such a deduction, the judgment must be reversed and a new trial granted, with costs to abide the event.
Ordered accordingly.

 See Chouteau v. Suydam, (21 N. Y. R., 1T9,185,) affirming the like order of this Court.
Reporter.