By the Court—Woodruff, J.
The original validity of the mortgage given to the plaintiff upon the horses, stages and other personal property described therein is not questioned on this appeal. Yor is it suggested that the amount of the debt remaining due to the plaintiff *407 upon the notes which the mortgage was given to secure, has not been correctly found by the Court on the trial.
The appellants, Waterbury and Youngs, insist that they, being purchasers of the property, hold (or that Waterbury did hold, and Youngs now holds) the same free of any claim of the plaintiff under the mortgage, because the copy thereof, filed in February, 1855, (shortly before the expiration of the first year from its execution and delivery.) was not accompanied by a sufficient statement, showing the plaintiff’s interest at that time in the property.
The statement then filed, taken by itself alone, did not disclose the interest of the mortgagee, it neither stated, in terms, the amount which had been paid upon the mortgage debt, nor the amount which remained unpaid. It was, however, accompanied by a copy of an agreement made subsequent to the giving and filing of the original mortgage, .and such agreement was referred to in such statement, and the copy was filed therewith. If the two papers, read together in connection with the original mortgage, disclosed the interest of the mortgagee intelligibly, the statement should not be held insufficient, on the ground that the amount for which the mortgagee still held the mortgage as security was not specifically named. The agreement recited the several notes which were given to the plaintiff in part payment of the price at which he had sold his interest in the property, and stated when they were given, and when they had or would become due, according to their terms, and then proceeded to modify them in some particulars as to the times of payment; and it is not denied that the accompanying statement, filed with a copy of this agreement, and declaring that such only of the notes as according to the terms of that agreement had become payable, had been paid, sufficiently defined the mortgagee’s interest in the mortgaged property, so far as relates to the remaining notes. But the mortgage was also given to indemnify the plaintiff against certain outstandiug liabilities of himself and Jimmerson. Those liabilities were some of them outstanding, and are *408 still outstanding. Indeed, the plaintiff now claims and has recovered judgment directing the payment of one, and the reimbursement to himself of what he has paid on account of others of those liabilities, and yet, in the said statement, he does not suggest that he claims any interest in the property as security for any such liability. On the contrary, he says, in terms, that the “ amount of the unpaid notes constitutes the amount of my” (his) “interest in the property claimed by me” (him) “by virtue of the said mortgage.” He thus, in terms, defined his interest, so as in effect to inform all to whom the information might be useful, that whatever were the debts or liabilities originally secured by the mortgage, or mentioned in the agreement, of which a copy was annexed to the statement, his present interest consisted in the mortgage lien on the property to secure the unpaid notes. It is true that the copy of the agreement annexed, showed that the mortgage was originally given to secure the payment of other liabilities of the late firm of Jimmerson & Beers; but the plaintiff did not state nor suggest that any of those liabilities remained outstanding, and all the terms of the agreement are entirely consistent with the truth and accuracy of the statement, that his interest, at the time the statement was filed, was confined to those notes which were described in the agreement, and which, according to such agreement, had not become payable.
If, therefore, the plaintiff’s claim against the appellants, who were subsequent purchasers, depends upon the accuracy of the statement in question, we are constrained to say that in respect of any claim in the plaintiff to a lien upon the property as security for any amounts or liabilities not mentioned in the statement, the statute was not complied with, and the mortgage became inoperative. (2 Rev. Stat., 3d ed., 196, § 11 ; Laws of 1833, ch. 279, § 3.)
But it does not follow that the mortgage became wholly void for this reason, not even as against creditors or subsequent purchasers in good faith. The statute requires, that a true copy of the mortgage be filed, “together with *409 a statement exhibiting the interest of the mortgagee in the property thereby claimed by him by virtue thereof.” It is settled, that in this copy and statement, the mortgagee may not represent the amount as greater than it really is. (Ely v. Carnley, 3 E. D. Smith, 490, affirmed in the Court of Appeals, 19 N. Y. R., 496.) But we think that neither reason nor justice, nor any necessary construction of the statute, renders an understatement of the amount due fatal. The object of the statute is, to inform creditors, purchasers, &c., of the extent of the mortgagee’s claim under the mortgage, and thus to apprise them of the interest of the mortgagor which they may seek to levy upon, or give credit to, or acquire. If the mortgagee states his interest at a less amount than he might claim, parties designed to be protected by the statute are protected, and are protected in the precise mode contemplated by the statute, if the mortgagee be held to the terms of his statement; as against them he can never afterwards claim that any greater sum is due or secured by the mortgage than is mentioned, in terms or by intelligible reference, in his own statement. If the mortgagee chose voluntarily to relinquish his security as to a part of the sum secured, we think this Avould be an effectual mode of doing so, and that it Avould be quite consistent with the design and just construction of the statute; creditors and subsequent purchasers would have full protection.
So, if by mistake, or through misapprehension of what was necessary, he limits his claim oí interest under the mortgage to a less amount than is really due to him, the same result equally satisfies the statute and protects all third parties. As to them, he is bound by his statement.
It is suggested, that it was not necessary to repeat in the statement, when the copy of the mortgage was filed, that the mortgage still remained a security by way of indemnity for outstanding liabilities.
If the mortgagee had simply stated that his interest continued to be as expressed in the mortgage, except that *410 the notes due to him which had become payable were paid, there would be no such embarrassment as now exists. He did not content himself with this. He undertook to state affirmatively, what constituted his interest for the future, and in no manner, intimates that he holds the mortgage as an indemnity, but excludes that idea by claiming it only as security for certain notes. This is not only consistent with the idea, that since the making of the mortgage, all other liabilities secured thereby had been paid off, but it distinctly imports that this is so. And, again, it is just as important that creditors and subsequent purchasers should be rightly informed whether the property still remains as security for such liabilities, as that they should know whether the debt due to the mortgagee, or any and what part of it, has been paid.
Unless, therefore, the want of a correct statement that • there were still liabilities outstanding, the payment of which was secured by the mortgage, is cured by some other fact or circumstance, then the amount recovered by the plaintiff out of the mortgaged property is too great. He should not have been allowed, as against the appellants, either the debt due to D. Willis, or the amount of taxes paid by him.
Ho such fact or circumstance is contained in the finding of facts by the Court at Special Term ; there the conclusion appears to proceed solely on the proposition that the statement as filed was sufficient. In the opinion of -the Judge it is stated that if the statement was not sufficient, the appellants cannot take advantage of the defect, because they had actual notice. Without questioning the proposition that the subsequent purchaser who can take advantage of such a defect in the refiling must be a purchaser in good faith, and that if he have actual notice both of the original mortgage and of the actual amount due, or at the time of his purchase secured thereby, he is not such a purchaser in good faith, there are two reasons why we think the appellants may take advantage of the defect in the present case. The first is that the Court at *411 Special Term have not found that they had any knowledge of the actual amount for which the mortgage was held as security when they purchased; and although they admit in their answers knowledge that the plaintiff held a mortgage, they deny that they had any knowledge of the amount due thereon, and state they were informed that nothing was due.
Obviously it is not enough that they had notice of the existence of the mortgage, for the whole purpose and object of the refiling at the end of the year is that creditors and purchasers may be informed what is the interest of the mortgagee at the time, and the mortgage ceases to operate if that be not .done. The second reason is that the proofs do not warrant a finding that the appellants knew or had reason to suspect or believe that the statement filed in February, 1855, was not strictly true; it was not shown that they had any notice that any outstanding liabilities of Jimmerson & Beers, mentioned in the schedule annexed to the mortgage, were still outstanding and unsatisfied. On the contrary, the very notice publicly given by the plaintiff, produced in writing, which he says he read at the auction sale at which the appellant, Waterbury, purchased the property, states that he has a mortgage, aud that $5,243.50, with interest from February 1st, 1854, is unpaid thereon, all of which is due and collectible. This not only does not give notice that the mortgage is held also as an indemnity against other liabilities then outstanding, but it excludes any such idea.
But for this defect in the statement made on filing the copy of the mortgage, we should think there was no error in allowing the plaintiff’s lien and directing the payment of the amount due Willis, and reimbursing the amount paid for taxes of 1853 to the amount of $300, and all the interest which, under the laws regulating tfie collection of taxes, was chargeable thereon. The Court did, however, allow two sums, $251.73, and another tax which, with interest, amounted, when paid, to $181.45, but the original or principal amount of which was not proved. In *412 the complaint the plaintiff only demanded the first sum, $251.73, with the interest, paid by him, amounting to $356.13, and had any objection been made he could not have been permitted to prove, under that complaint, any other sum. The proof was, however, received without objection; Still, this could not enlarge the scope of the mortgage itself. The taxes, payment whereof was secured, were set down in the schedule annexed to the mortgage at a specific sum, ($300,) and as against subsequent purchasers of the property not having notice of any mistake, this amount could not be enlarged by ¿proof that there were taxes which exceeded that amount. At most, $300 as the principal, and the interest which the plaintiff was required to pay thereon, and interest on the aggregate from the time he made the payment, was all that, as against such purchasers, the plaintiff was entitled to.
In regard to the alleged agreement by the plaintiff to take $2,500 in stock, it must suffice to say that we do not think the finding of the Court is against the weight of the evidence, but the contrary.
It was strenuously insisted upon by the appellants that the mortgage could not, as against subsequent purchasers, operate to bind property not owned by the mortgagors when it was given, but afterwards, in the course of their business, substituted for portions of the mortgaged property used up or disposed of; that the covenant in that respect is personal to the original mortgagors; and that the only new property substituted or brought within the terms of the mortgage as to substitution, was purchased by the appellants, after they became owners of the mortgaged property. Although the Judge, at Special Term, in the memorandum of opinion printed in the case, does consider the substituted property bound by the mortgage, neither his conclusions of law, nor the judgment of the Court, adjudged such property to be subject to the lien of the mortgage. All that is directed to be delivered to the receiver, and all that is to be sold, is the property now remaining, which was included originally in the mortgage. *413 The exception, therefore, fails. On settling the judgment, and in stating the conclusions of law, the Oourt have followed the precise view now urged by the appellants upon us, and the claim to reverse the judgment on this ground (even if they are right) fails, because no such decision was made as they complain of.
Instead of charging the substituted property with the lien of the mortgage, the Court have charged upon the appellants the value of'the property, which was included in the mortgage, and which it is admitted they have consumed, sold, destroyed or disposed of. In this there is nothing inequitable.' The value of this portion, of the property is also agreed upon; and if what remains of the property should not produce sufficient to satisfy the debt due to the plaintiff, it is difficult to suggest a reason why they ought not to make it good.
This is the only personal liability cast upon them by the judgment. Even conceding that they took the property in hostility to the mortgage, not only not assuming to pay it, but denying that it was an existing lien, still they took, with notice of the mortgage, and had no right to deprive the plaintiff of his security by destroying or disposing of the property.
As to the appellants’ claim to an allowance, by way of counterclaim, founded on the fact that the plaintiff was a stockholder; we think that the question involved therein is not open to discussion. The case of Bailey v. Bancker, (3 Hill, 190,) must be deemed to dispose of the question. The appellant, Waterbury, being himself a stockholder, can only set up the claim in a proper action against the stockholders generally for a contribution.
And the alleged counterclaim, founded on the supposed subscription of the plaintiff, for $5,000 of stock in the Stage Company, was properly rejected: First, because the facts proved show that that subscription was abandoned; second, because no such counterclaim was set up in the answer; and this is fatal, since, to allow it, because some evidence of it was given, would not be to disregard amere variance, *414 but would permit an entirely new and substantive cause of action in no wise alluded to in the answer to be introduced and sustained, (Crane v. Hardman, 4 E. D. Smith, 448 ; Storp v. Harbutt, Id., 464 ;) and third, because it is not a cause of action in favor of the appellants; but in favor of the Stage Company, which the Company have not claimed, and which they have not assigned to the appellants ; and the latter have not set up nor shown any grounds upon which they should be permitted to use it as a defense. (See Farge v. Halsey, 1 Bosw., 171 ; Peabody v. Bloomer, 6 Duer, 53 ; Boyd v. Foot et al., 5 Bosw., 110.) It is not alleged or proved that the Stage Company is insolvent, and that the relations of the parties are such that, for that reason, the appellants should be permitted to avail themselves of such a claim if it existed.
The judgment is, we think, for the reasons first above stated, erroneous, in so far as relates to the allowance, out of the proceeds of the mortgaged property, of the sum paid for taxes and the debt due Willis; and, as to the appellants, should be modified by abatement to that extent. This, however, does not deprive the plaintiff of his right to have the full amount from the Stage Company, who have not appealed.
If the plaintiff should consent to deduct, from the recovery from the appellants and the mortgaged property, the two items thus specified, leaving the judgment to stand for the full amount as to the other defendants, the modification should be made and the judgment as modified be affirmed without costs on the appeal.
If he do not so consent the judgment must be reversed, and a new trial ordered, with costs to abide the event.