BARNES v. McMULLINS, *Appellant.*

1. **Temporary Judge**: CHANGE OF VENUE: IN CIVIL CASES. Under the act of 1877 in relation to temporary judges (Acts 1877, p. 217; R. S. 1879, §§ 1106 to 1113,) if an affidavit of prejudice was filed against the regular judge in a civil case, and the parties failed to agree upon a substitute, the judge might either order an election of a temporary judge for the trial of the case by the members of the bar present, as provided by that act, or grant a change of venue to another circuit, as provided by Wagner's Statutes, page 1355, sections 1, 2, 3, 4.

2. ———. The above act of 1877 authorizing election of temporary judges in civil cases was constitutional.

3. ———. If a temporary judge elected under that act was disqualified by prejudice, the act provided for holding another election. There was no right to a change of venue.

4. **Counter-claim.** Nothing can be pleaded as a statutory counterclaim that does not constitute a demand against the plaintiff.

5. **Negotiable Paper**: TRANSFER AFTER MATURITY: COUNTER-CLAIM:

OFFSET.    nis State, when a negotiable note is indorsed or trans-
ferred aiter maturity, the right of offset or counter-claim on an in-
dependent contract does not follow it in the hands of the assignee.
We adhere to the English rule that only such equities follow it as
arise out of or inhere in it, and that the assignee takes it divested
of all rights and claims arising out of independent transactions. See
*Cutler v. Cook*, 77 Mo. 388.

6. **Equity Jurisdiction of Cross-demands**: GENERAL RULES: IN-
SOLVENCY: NON-RÉSIDENCE. The jurisdiction of equity to afford re-
lief in behalf of a cross-demand in a proper case, is of ancient
.origin. It existed prior to any statute of set-off; and still exists
independent of any such statutes. But courts of equity are often
enabled by them, on the well-known principle of following the law,
to afford more efficient relief and in a greater variety of cases than
before the statute.

The relief given depended upon the circumstances of each case,
sometimes there would be a decree that the demand of the defend-
ant be applied to the payment and discharge of the demand sued
on ; sometimes a decree restraining the plaintiff from prosecuting
his demand till the defendant had established or failed to establish
his cross-demand in a court of law. The moving principle was not
so much the inconvenience and circuity of two actions, as the in-
justice of compelling the defendant to pay the demand against him
and take the chances of insolvency of the plaintiff or the plaintiff's
assignor. In cases where it was ascertained that the plaintiff was
only a nominal owner or assignee without value, the court would
decree an offset; but in all such cases there had to be some fact,
such as insolvency or non-residence, showing imminent danger of
the defendant being compelled to pay without receiving credit for
his cross-demand.

7. ——— : UNLIQUIDATED CROSS-DEMANDS. Whether this jurisdiction
may be exercised in favor of cross-demands at law arising *ex contractu*,
or of equitable cross-demands, such as the right to a prospective bal-
ance in an unsettled partnership, is discussed but not decided. But
in no case will it be exercised in favor of an unliquidated cross-de-
mand *ex delicto* in its nature. Compare *Reppy v. Reppy*, 46 Mo. 571.

8. **Statutory Counter-claim**: "ACTION ARISING ON CONTRACT." In
. determining what may be considered as " an action arising on con-
tract," within the meaning of the second subdivision of section 3522,
Revised Statutes 1879, a rather liberal construction has been em-
ployed by the courts. All independent express contracts, whether
liquidated or unliquidated, are the subject of counter-claim under
this subdivision, as a matter of course; and it has been held that in
all that class of cases in which a tort has been suffered and the law
permits the sufferer to waive the tort and sue upon an implied con-

tract, if he indicates in his plea that he is proceeding on the implied assumpsit, his action will be sustained under this subdivision as an action arising on contract.

9. **Case Adjudged.** The cross-demand asserted in the present case being one for fraud and deceit practiced in making and executing a contract of sale, rather than for breach of the contract; *Held*, that it could not be entertained, the plaintiff's action being upon a promissory note having no connection with the contract of sale.

10. **Practice:** EXCEPTIONS. Where the bill of exceptions shows that the appellant declined further to appear or participate in the trial, this court cannot consider objections which purport to have been subsequently taken at the trial. '

11. **Promissory Notes:** DAMAGES IN LIEU OF PROTEST CHARGES. The damages allowed by statute in lieu of charges for protest, etc., are to be computed on the principal sum specified in the note, not on the principal and interest.

*Appeal from Livingston Circuit Court.*—The case was tried before J. M. DAVIS, ESQ., sitting as Special Judge.

REVERSED

*J. J. Clark* for appellant.

*C. H. Mansur* for respondent.

MARTIN, C.—This was an action on a negotiable promissory note, made by defendant and payable to one Robert J. Pence, in the sum of $1,236.50, and indorsed by him to plaintiff. The petition was filed on the 26th day of December, 1877.

Before making answer the defendant filed his application for a change of venue, based upon an affidavit that the judge of the court was so prejudiced against him that he could not have a fair trial. When the application came on for hearing, the court overruled it, and ordered the clerk to hold an election for the purpose of electing a special judge to try the case. This order was based upon the affidavit of the defendant, charging him with prejudice. The election was held and resulted in the election of Smith

Turner, Esq., a member of the bar. After he took his seat to try the case, the defendant made another application for a change of venue, based upon another affidavit charging prejudice on the part of said Turner. Thereupon Mr. Turner refused to proceed further with the case, and resigned the position to which he had been elected. The judge of the circuit then ordered the clerk to hold another election, which was done, and James M. Davis, Esq., a member of the bar, was elected, and, as the record shows, went on to try the case, after having taken and subscribed the oath required by law. Before the trial began, defendant made another application for a change of venue, based upon another affidavit charging Mr. Davis with prejudice against him. This application was overruled, and the case was ordered to proceed.

The defendant had filed his answer a few days before said election, in which he admitted the execution of the note and denied all the other allegations. It then went on to say that defendant had purchased from said Robert J. Pence, the payee of the note, a stock of goods for the price of $8,000, and had paid him for them; that before the purchase said Pence represented to defendant that the goods were good and sound, and promised that if they were not sound or came short, in a fair invoice price, of the sum of $8,000, he would refund to defendant the full amount of whatever the said stock of merchandise fell short of the amount of $8,000, whether by reason of damage or lack of quantity; that defendant purchased on the faith of said representations and promises; that said Pence caused the goods to be invoiced at a price much above their real value; that said goods fell short by reason of unsound and damaged goods, more than $3,000, and in quantity more than $700; that said Pence, although requested, had failed to refund said sum or make defendant whole for the damages sustained; that well knowing defendant's claim the plaintiff had conspired with said Pence to cheat and defraud defendant, and to that end had accepted and received the note in

suit without consideration, which was indorsed to him long after said Pence had been notified of defendant's demand aforesaid. It is added that said Pence is insolvent and a non-resident, and that defendant will be remediless if compelled to pay the said note; that by reason of the premises defendant has a just and equitable counter-claim against said Pence, of which plaintiff had notice before he became possessed of the note.

That part of the answer containing the equitable counter-claim was on motion stricken out.

A few days afterward an amended answer was filed containing the same matter more specifically pleaded, in which it was alleged that said Pence at the time of the sale well knew the unsound and damaged condition of the goods, and agreed to ship them to Chillicothe and re-imburse defendant for all damaged goods and refund the price of all invoices failing to reach defendant. The counter-claim as thus pleaded was stricken out the second time.

At this stage of the case the defendant, according to his statement and the bill of exceptions, abandoned the case, declining further to appear or participate in the trial, save only to object to the case being tried by the special judge. His objections were overruled and the case proceeded. A jury was sworn and evidence introduced to sustain the issues on the part of plaintiff. The defendant declined to cross-examine witnesses or participate in the trial. A judgment was rendered in favor of plaintiff in the sum of $1,516.30. The defendant seems to have re-appeared in the case and moved for a new trial and in arrest of judgment. I will now consider the material exceptions to the action of the court as presented in the record.

I. It is urged by defendant that the judge of the cir-
1. TEMPORARY JUDGE: change of venue: in civil cases.
cuit court had no authority in law to order the election of a temporary judge to try the case.

The 2nd section of the act of the general assembly relating to the election of temporary judges, approved May

19th, 1877, provides that: " If the judge is interested or related to or shall have been counsel for either party, or when the judge, if in attendance, for any reason, cannot properly preside in any cause or causes pending in such court, and the parties to such cause or causes fail to agree to select one of the attorneys of the court to preside and hold court for the trial of cause or causes, the attorneys of the court who are present, but not less in number than five, may elect one of its number then in attendance, having the qualifications of a circuit judge, to hold the court for the occasion." Sess. Acts 1877, p. 218. The act provides that the election shall be held by the clerk of the court, and that if the person first elected to act as special judge fails or refuses to act, another election shall be held in like manner, from time to time, until a suitable person is chosen, who can and will preside.

The defendant in this case filed his application for a change of venue alleging that the judge was prejudiced, and insists that under the provisions of the statutes relating to change of venue the court had no discretion in the matter, but was required by law to send the case to another circuit. 2 Wag. Stat., p. 1355, §§ 1, 2, 3, 4. The solution of this question involves a construction of the act of 1877, relating to temporary judges, and it is not entirely free from doubt, in my mind.

The statutes in force prior to this act allowed changes of venue on account of the interest, relationship or prejudice of the judge, and undue influence of the opposite party. The filing of the affidavit, without proof at all in support of it, rendered it compulsory upon the judge to stop all further action in the case and send it for trial elsewhere. He had no discretion in the matter when the application was in conformity with the statutes. Corpenny v. City of Sedalia, 57 Mo. 85. When the judge was interested in the cause, or was related to either party, or had been of counsel, it was obligatory on him, upon simple motion, to send the cause elsewhere for trial without application on affi-

davit.   And in such cases he had no authority to try it without the consent of both sides.   2 Wag. Stat., 1356, § 5 ; *Gale v. Michie*, 47 Mo. 326.

It will thus be seen that a formal application upon affidavit for a change of venue on account of prejudice or undue influence, and a simple motion for a change in a case of interest or relationship of the judge, by disqualifying him for trying the case, necessarily furnished the grounds upon which a special judge is authorized to be elected under the act of 1877.   The law as it stood prior to the act of 1877, compelled a change of venue when any of those disqualifications occurred.   The act of 1877 authorized the election of a temporary judge when the judge had been of counsel, or was interested in the cause, or related to either party, and " when the judge, if in attendance, for any reason cannot properly preside in any cause," and the parties fail to agree upon a special judge.   The act does not specifically designate the disqualification rising from prejudice or undue influence, but it provides for an election when the judge is disabled from properly presiding for any reason.   When that reason is apparent it is a matter of no consequence whether it is one of the grounds for change of venue or not.   The act authorizes an election when the judge cannot preside for any reason.   Now when it is spread upon the records that the judge is prejudiced or is subject to undue influence; by the affidavit of the party, which he cannot dispute or disprove, it seems to me his *status* toward the case is fixed.   He cannot properly preside, and the election of a special judge is in order.   If the election cannot take place except in the specified instances of interest, kinship or relation as counsel, then no effect would be given to the comprehensive term of " any reason."   The fact that a change of venue is provided for in the case of prejudice and undue influence, does not militate against this construction of the act, because a change of venue was also given by the statutes when the judge was related to either party or was interested in the cause.   Such reasons

of disqualification are undoubtedly included in the act of 1877. In all cases in which the judge is prevented from properly presiding by reason of disqualifications pertaining to himself, whatever may be their character, the act of 1877 seems to permit the selection of a special judge.

I do not think the court would have erred if a change of venue had been granted upon the formal application of defendant, because the act does not, like the act relating to criminal cases, forbid a change of venue. Sess. Acts 1877, p. 357. The language of the act of 1877 relating to civil cases does not seem to command the selection of a special judge in the place of granting a change of venue. In the 6th section it gives the privilege of selecting the judge to the parties when the disqualification occurs. Upon their failure to agree the clerk is authorized to hold an election. If before an election takes place the judge sees fit to grant a change of venue, I see nothing in the act to prevent him from doing so. If he does not grant the change, and either the parties select a judge, or upon failure to agree, the members of the bar select one, the right to remove the cause by change of venue is in that event superseded and withheld by the act of 1877. I regard this act as an abridgment or restriction upon the right to a change of venue under the statutes. When the disqualification happens, the judge can order a change of venue or he can wait a reasonable length of time for the parties or the members of the bar to elect one. I was under the impression that an order of some kind by the judge officially announcing the fact of disqualification was necessary to justify the clerk in holding an election. But in the case of *Lacy v. Barrett*, 75 Mo. 469, the necessity of such an order is dispensed with as not being called for in the act.

In this case the parties could not agree upon a special judge; the defendant made his disagreement very pronounced by denying the privilege of election to the bar in any event, and denouncing the whole act as unconstitutional. An order reciting the disqualification of the judge and ordering

an election was made by the circuit court. In the case of *Lacy v. Barrett* the judge was disqualified by reason of having been of counsel in the case. Under the statutes prior to the act of 1877, it was obligatory on him to order a change of venue. Under the act of 1877 he felt authorized to allow an election of a special judge instead of ordering a change, and his action in doing so has been recognized as legal. In that case there was no formal affidavit for change of venue. But under the statutes it was his duty to order a change without one, and that duty was as imperative upon him as in a case of prejudice or undue influence, evidenced by affidavit. He is at liberty in both such cases to order a change of venue or permit the election of a special judge.

This construction of the act of 1877 can work no injustice in view of the fact that it has been in force for six years. It will not nullify judgments and trials which have been held before special judges elected in conformity with its provisions; neither will it affect the action of the judge when he has exercised his discretion of ordering a change of venue, and not waited for an election of a special judge.

II. The power of the legislature to provide for the election of temporary judges in civil cases is hardly open 2. ——. to any question, since the act relating to criminal cases has been held constitutional, and the election in civil cases accepted as valid. Sess. Acts 1877, p. 357; *State v. Daniels*, 66 Mo. 192; *Ex Parte Allen*, 67 Mo. 535; *Lacy v. Barrett*, 75 Mo. 469.

III. The first judge selected having resigned and refused to act, the right to select another is provided for in 3. ——. the act. The right to a change of venue on account of the prejudice of a special judge is not provided for, and does not exist. We do not think this is an open question. *State v. Greenwade*, 72 Mo. 298.

IV. The main point on the merits of this case rises from the action of the court in striking out the counterclaim of the defendant. It is preserved in the bill of ex-

ceptions as originally pleaded; and as contained in the amended answer, it appears of record. · There is no pretense that this counter-claim relating to the sale of the stock of goods is in any way connected with the note sued on. It relates to an entirely independent transaction between Pence and the defendant, which took place after the execution and delivery of the note, which had a consideration of its own. Hence, the right of action and cross-demand cannot fall within the first subdivision of section 3522 relating to counter-claims. We are thus relieved from the often difficult inquiry as to whether the cross-demand is so connected with the plaintiff's cause of action as to be a fit subject of counter-claim or recoupment, irrespective of its form and character as a cross-demand.

Under the second subdivision the defendant is permitted to plead " in any action arising on contract, any other cause 4. COUNTER-CLAIM. of action arising also on contract and existing at the commencement of the action." The section declares that the counter-claim defined in it must exist in favor of the defendant and against the plaintiff. The counter-claim pleaded in this case was not a demand against Barnes, the plaintiff, nor could any judgment on it be rendered against him. This fact, of itself, is conclusive against the defendant's right of counter-claim, as a legal demand under the statutes. *Holzbauer v. Heine*, 37 Mo. 443; *Spencer v. Babcock*, 22 Barb. 326; *Gleason v. Moen*, 2 Duer 642; *Davidson v. Remington*, 12 How. Pr. 310; *Vassear v. Livingston*, 13 N. Y. 248; *Merrick v. Gordon*, 20 N. Y. 93; *Boyd v. Foote*, 5 Bosw. 110; *Grier v. Hinman*, 9 Mo. App. 213; *Wright v. Jacobs*, 61 Mo. 19.

If the portion of the answer stricken out contains a defense of any description, it must be in equity, as no such 5. NEGOTIABLE PA- cross-action or demand could be entertained PER: transfer after maturity: counter- either at common law or under the statutes. claim : set-off. We are thus confronted with the inquiry as to the relief furnished in equity to a defendant who has a cross-demand, which is good as against the plaintiff's as-

signor, but cannot be pleaded as a counter-claim at law against the assignee when sole plaintiff. One thing is conceded on all hands, that equity will not afford relief upon the mere existence of such a demand in favor of the defendant. In this State when a negotiable note is indorsed or transferred after maturity, the right of offset or counter-claim on an independent contract does not follow it in the hands of the assignee. We adhere to the English rule that only such equities follow it as arise out of or adhere in it, and that the assignee takes it divested of all rights and claims arising out of independent transactions. *Gullett v. Hoy*, 15 Mo. 399; *Unseld v. Stephenson*, 33 Mo. 161; *Mattoon v. McDaniel*, 34 Mo. 138; *Arnot v. Woodburn*, 35 Mo. 99; *Grier v. Hinman*, 9 Mo. App. 213; *Haeussler v. Greene*, 8 Mo. App. 451.

It may be remarked in passing, that a resort to equity in the allowance of some cross-demands which are good at law as against the assignors of the plaintiff, has been obviated in some states by statutes. For instance, in New York under their code of civil practice, a set-off which was good against the payee of a negotiable note is good against his indorsee if received by him after maturity. Code C. P., § 502; *Weeks v. Prior*, 27 Barb. 79. And in this State we have a provision in the statute of set-off which preserves, as against the assignee of a non-negotiable note, any offset which the defendant may have had against the assignee prior to notice of assignment. R. S. 1879, § 3868. This section, which in its present form appears first in the statute of Set-off in the revision of 1865, embraces the substance of similar provisions contained in the statute on Bonds and Notes from 1835 to 1865. R. S. 1835, p. 105; R. S. 1845, pp. 190, 191, §§ 3, 4; R. S. 1855, p. 322, §§ 3, 4; R. S. 1865, p. 602, § 2; R. S. 1879, § 3868.

Resuming the inquiry as to the defense equity can afford when cross-demands exist in favor of the defendant, which

Barnes v. McMullins.

6. EQUITY JURISDIC-
TION OF CROSS-DE-
MANDS: general
rules: insolvency:
non-residence.
cannot be asserted at law against the plaintiff in the same case, I may state that the jurisdiction of equity to afford relief in a proper case is of ancient origin, that it existed prior to any statute of offset, and that it exists still independent of such statutes, although very often enabled by such statutes, on its well-known principle of following the law, to afford more efficient relief and in a greater variety of cases than before the statute. Barbour Set-off, (1 Ed.) 189 ; *Green v. Darling*, 5 Mason 202. The relief given in equity depended upon the circumstances of each case. Sometimes the chancellor would enter up a decree that the demand of the defendant be applied to payment and discharge of the demand sued on. At other times a decree would be entered restraining the plaintiff from prosecuting his demand, until the defendant had established or failed to establish his cross-demand in a court of law. The persuading principle which moved equity in these cases was not so much the inconvenience and circuity of two actions, as the injustice of compelling the defendant to pay the demand against him, and take the uncertain chances of insolvency of plaintiff or the plaintiff's assignor when the defendant called on him with an execution. In some cases equity would decree an offset as if the cross-demands were between the real owners, having ascertained that the plaintiff was only a nominal owner or an assignee without value. But in all such cases there had to be some fact disclosing the imminent danger of the defendant being compelled to pay without receiving credit for his cross-demand. Insolvency or non-residence of the defendant's debtor was generally accepted as a sufficient ground for equitable relief of some kind. *Field v. Oliver*, 43 Mo. 200 ; *Fulkerson v. Davenport*, 70 Mo. 541 ; *Howard v. Shores*, 20 Cal. 277 ; *Hobbs v. Duff*, 23 Cal. 596 ; *Schieffelin v. Hawkins*, 1 Daly 289 ; *Vassear v. Livingston*, 13 N. Y. 249 ; *O'Blenis v. Karing*, 57 N. Y. 649 ; *Boyd v. Foot*, 5 Bosw. 110 ; *Wallenstein v. Selizman*, 7 Bush 175.

V. The insolvency and non-residence of the plaintiff's assignor, and the fact of the assignment without value, sufficiently appear in the defendant's plea, and furnish the proper grounds for equitable interference, provided the demand in behalf of which it is invoked is of such a character as will justify the assistance and aid of a court of equity. It was laid down in the old cases that equity would not interfere in behalf of an unliquidated demand, and the doctrine of equitable interference in the adjustment of cross-demands has been generally recognized as applying only to liquidated claims on contract, some courts going so far as to deny it even in that class of cases, when the debt was not due. *State v. Welsted*, 11 N. J. L. 398; *Bradley v. Angel*, 3 N. Y. 475; *Keep v. Lord*, 2 Duer 78. In *Field v. Oliver*, 43 Mo. 200, Judge Wagner remarks: "A set-off is ordinarily allowed in equity only when the party seeking the benefit of it can show some equitable ground for being protected against his adversary's demand. 2 Story Eq., § 1436. When the party has a plain redress at law not merely by pleading but by an original suit, a court of chancery will generally refuse to assume jurisdiction, nor will equity take cognizance of a case or extend its jurisdiction to sustain as a set-off a sum so uncertain as to require a jury to be empanelled to liquidate it. But when the demand sought to be set-off is certain and definite, and the insolvency of the adverse party is admitted, the chancellor has jurisdiction to retain the matter and give full and final redress by decreeing a set-off or any other relief consistent and proper in the case. The rule is founded in reason and justice, and will be enforced when a proper case is made out, justifying its application."

I am not aware that this equitable control over cross-demands has ever been invoked in this State in favor of unliquidated legal demands. Cogent reasons readily occur to the mind against an extension of the doctrine. It involves an assessment of damages before the set-off can be decreed. This is an undertaking which equity avoids when-

*7. ———: unliquidated cross-demands.*

ever it can. Then again, the assessment may result in nothing or perhaps a very small sum to be offset against the plaintiff's demand, and the injustice of holding the plaintiff's demand in obeyance for so uncertain an event must often fall on him. Notwithstanding these reasons it may plausibly be argued that as the law now allows unliquidated demands arising on contract to be offset one against the other under the name of counter-claim, equity ought to follow the law, and in cases of insolvency or non-residence of the plaintiff's assignor, furnish relief in like manner as in liquidated cross-demands. When the unliquidated demand of the defendant is of an equitable character, such as the right to a prospective balance in an unsettled partnership, some of the reasons against the exercise of equitable jurisdiction, such as the assessment of damages by a chancellor, are obviously wanting. Whether equity would in this State help the defendant in asserting such a right by way of counter-claim, has been touched upon but not decided.

In *Jones v. Shaw*, 67 Mo. 667, the plaintiff sued two defendants on a promissory note. The two defendants averred in their answer that the plaintiff and one of the defendants had been in a partnership which proved unsuccessful and remained unsettled, and that the defendant copartner had paid more than his share of the losses, and asked that the excess of his payment be set off against the notes sued on. As a counter-claim pleaded in this way it was denied. The court did not concede it to be a demand which equity could assist the defendant in offsetting against his note. Judge Hough remarks: "If on account of the insolvency of the plaintiff, or other cause, the court would have been warranted in depriving the plaintiff of his right to a judgment on the note in suit until the copartnership affairs of the plaintiff and the defendant Shaw were settled and determined, or if the right of the defendant Shaw to maintain a suit for the settlement of the copartnership could be deemed to be within the definition of a counter-

18—78

claim, still the defendant cannot complain of the action of the court below. Neither the insolvency of plaintiff nor other ground for equitable relief was alleged, and the defendant Shaw neither stated nor prayed an account of the partnership affairs."

In the disposition of this case it may not be necessary to decide whether equity will or will not interfere in behalf of unliquidated counter-claims arising on contract, either at law or in equity, in like manner as in liquidated contracts. One thing is certain, that it will not interfere in behalf of any cause of action under the second subdivision which does not arise on contract. It would not be following the law, if it extended its aid in behalf of actions of an *ex delicto* character which were wholly independent of the plaintiff's demand. No case of equitable intervention will be found going this far.

VI. Is the action which the defendant asks to have offset in this case an action *ex delicto*, or an action rising on contract?

In determining what may be considered as actions rising on contract, within the meaning of the second subdivision, a rather liberal construction has been employed by the courts. All independent express contracts, whether liquidated or unliquidated, are the subject of counter-claims under this subdivision, as a matter of course. And it has been held that in all that class of cases in which a tort has been suffered, and the law permits the sufferer to waive the tort and sue upon an implied contract, if he indicates in his plea that he is proceeding on the implied assumpsit, his action will be sustained under this subdivision as an action rising on contract. He brings his cross-demand within the meaning and terms of the statute by showing that he has in fact elected to sue in assumpsit. Pomeroy Remedies, § 801. The law requires the defendant, in setting up his counter-claim, to state it with as much precision as if he were asserting it in an independent suit. *Holgate v. Broome*, 8

8. STATUTORY COUNTER-CLAIM: "action arising on contract."

Minn. 243. It ought to follow from this that if he desires the advantages accorded to an action *ex contractu* the burden rests on him to disclose that fact, in the averments of his pleading.

In subjecting the defendant's cross-demand to the test which distinguishes actions *ex delicto* from actions *ex contractu*, I think there can be no doubt about its falling within the former class. It seems to me it has all the elements of an action of fraud and deceit. This action is always connected with a contract. 2 Hilliard Torts, (4 Ed.) 73. Fraud or deceit accompanied with damages constitutes the cause of action. In stating it the law does not require the pleader to set forth the contract or any consideration, but simply the fraud or deceit and damages. 1 Hilliard Torts, (4 Ed.) 3.

9. CASE ADJUDGED.

In the present case the fraud or deceit was connected with a contract of sale, but the action is not for a breach of the contract, but for damages suffered by reason of the false and fraudulent representations of the vendor before and at the time of sale. It is alleged that Pence was owner of a stock of merchandise at Kansas City; the defendant had never seen the goods; that he bought and paid $8,000 to Pence for the goods which were to be shipped to him at Chillicothe; that Pence well knew the character, condition and quality of the goods; that he falsely represented to defendant that the stock consisted of good and sound articles, consisting of clothing, boots, shoes, hats, caps, etc., and such articles as generally compose a good stock of merchandise; that it would amount, at a fair invoice price, to $8,000; that defendant believing the said representations to be true and the promises of Pence to be made in good faith, and wholly relying upon the said representations and promises, purchased and paid for them the price aforesaid; that a large portion of said goods consisted of unsound and damaged articles, and fell short by reason of said unsoundness and damaged condition, more than $3,300 in value; that the stock also fell short in quality about $700; and that the

goods were invoiced at about $1,000 over and above a fair invoice. The cross-demand, as pleaded, contains the false representations, the *scienter* of the vendor to the effect that he knew the goods were unsound; the averment that defendant did not know it to be false, and that he was induced to buy, and did buy and pay for the stock by reason of the fraud practiced upon him, and that he has, been greatly damaged. The pleading is rather confusedly drawn, and includes some promissory representations to the effect that Pence would make good all short-comings in respect to the merchandise, whether from unsoundness or falling short in quantity. But these expressions of making good and refunding all losses and damages cannot do away with the case of fraud and deceit so unquestionably pleaded and depended upon by defendant. *Moore v. Noble*, 53 Barb. 425. The intention to deceive is sufficiently contained in the allegation that the representations were falsely made by a person who knew they were false.

The conclusion I have reached is, that the cross-demand of the defendant was not a cause of action arising on contract, and that equity will not, as in legal offsets or possibly in unliquidated actions on contract, interpose its aid in behalf of the defendant when he asserts an action in tort by way of cross-demand when sued upon his promissory note. Therefore, the action of the court in striking out the equitable defense from the amended answer was proper.

After the action of the court in striking out the cross-demand and overruling the application for a change of venue, the defendant seems to have abandoned the case. The bill of exceptions says " whereupon the trial progressed, the defendant declining further to appear or participate in the trial, only to object to any and all proceedings that plaintiff or the said James M. Davis, sitting as special judge, should or might thereafter take or have in the case." Under this state of things I do not think we are called upon to pass upon objections and exceptions appearing in the bill of exceptions, evidently com-

10. PRACTICE: exceptions.

Barnes v. McMullins.

ing from a party who was not present. Objections must be made and exceptions taken at the time of the action of the court. *City of St. Joseph v. Ensworth,* 65 Mo. 628; *Harrison v. Bartlett,* 51 Mo. 170. And I am unable to understand how the defendant could have objected and excepted after he had ceased to appear or participate in the trial. He will not be allowed the advantage of being absent and the advantage of being present, at one and the same time. In *Tower v. Moore,* 52 Mo. 120, Judge SHERWOOD remarks: " The *status* of a party in a court must be defined; he ought either to appear and go to trial and accept its incidents and consequences, or else quit the field altogether; he will not be permitted to occupy in this regard an ambiguous attitude, nor by the way attempted by this defendant, to appear, disappear or re-appear whenever he thinks it advantageous to do so."

I may add here that after the cross-demand was stricken out, there was nothing to try but the consideration of the note. The answer admitted its execution and the indorsements which placed the title in plaintiff. If there was a consideration received by defendant for the note, it was immaterial whether the plaintiff gave anything for it or not, so far as the action is concerned which remained in the pleadings. An indorsee for collection or by way of gift may sue in his own name. - *Webb v. Morgan,* 14 Mo. 428; *Beattie v. Lett,* 28 Mo. 596. On the evidence and instructions the plaintiff was entitled to a judgment on the note.

VIII. It is objected by defendant that the record shows that the damages of four per centum for protested paper were assessed upon the sum of the principal and interest instead of the principal alone. The amount of the judgment shows that this objection is well taken. The statutes give four per centum of damages " on the principal sum specified" in the bill or note. These damages are in lieu of charges of protest and other charges. 1 R. S. 1879, §§ 539, ‾46, 547. The plaintiff, on the face of the record, has judg-

*(margin note:* 11. PROMISSORY NOTES: damages in lieu of protest charges.*)*

ment for $8.81 more than he is entitled to. The plaintiff in his brief admits that the protest of the notary was not read to the jury and is not in the record of evidence, and offers to remit the whole of the statutory damages contained in the judgment. He is entitled to an affirmance for the balance in the sum of $1,458.04. The judgment of the circuit court will, therefore, be reversed, and judgment will be entered here for said amount. PHILIPS, C., concurs; WINSLOW, C., not sitting.

For the reasons given in the foregoing opinion the judgment was reversed, and judgment entered here as directed in said opinion. NORTON, J., absent.