HERMAN A. HAEUSSLER, Appellant, *v.* THEODORE P. GREENE, Respondent.

### March 9, 1880.

1. The indorsee of an overdue negotiable bill or note takes it, as against the maker, subject only to the equities arising out of the bill or note transaction itself; not subject to a set-off arising out of independent transactions between the indorsee and maker, though it be indorsed to defeat the right of set-off, and the indorsee gave no value.

2. Where it is claimed that there was an agreement to consider a claim of the maker against the indorsee as an equity against the paper in the hands of the indorsee, the burden is upon the maker to show this.

3. Where the principal, holding negotiable notes of one of his sureties, defaults and transfers the notes to another of his sureties in trust for all the sureties, the surety who is thus made trustee for the others may sue the maker of the notes upon them, and the maker cannot set off, as against the notes, an indebtedness of his principal to him on account of payments made by him, as surety, to his principal's creditors.

APPEAL from the St. Louis Circuit Court.

*Reversed and remanded.*

BROADHEAD, SLAYBACK & HAEUSSLER, for the appellant: The indorsee of an overdue note does not take it subject to an offset arising from independent transactions between the parties. — *Arnot v. Woodburn*, 35 Mo. 99 ; *Unseld v. Stephenson*, 33 Mo. 161 ; *Smith v. Busby*, 15 Mo. 399. That the payee is indebted to the maker, and insolvent, makes no difference in a suit on the notes by the transferee. — *Hopkins v. Fechter*, 47 Mo. 331.

S. S. MERRILL, for the respondent: If the appellant sues as Gambs' representative, certainly he cannot ask a judg-

ment against respondent, to whom Gambs is a heavy
debtor. If he sues as trustee for the four sureties,
how can he, as the agent of the respondent, sue the re-
spondent? How can respondent be both plaintiff and de-
fendant in a lawsuit? The notes were passed to appellant
after maturity and without consideration. He takes them
subject to all the equities against them in Gambs' hands.
Gambs could assign no greater interest than he himself pos-
sessed. Hence appellant is subrogated to those rights
only which Gambs could assert.. If Gambs assigned these
notes to appellant in trust, for the benefit of his (Gambs')
sureties, nevertheless he cannot thereby enlarge his rights
against respondent. Appellant, being subrogated only to
such rights as Gambs could assert, took these notes sub-
ject to the following defences: 1. To payments made in
extinguishment thereof, prior to their transfer. 2. As
Gambs was insolvent, to the equity of respondent to as-
sert against appellant the $10,000 paid by him as surety for
Gambs prior to the transfer. *Wright* v. *Saulsbury*, 46
Mo. 30 [point not in syllabus]; *Field* v. *Oliver*, 43 Mo.
200; *Morrow's Assignee* v. *Bright*, 20 Mo. 298; *Reppy* v.
*Reppy*, 46 Mo. 571; *Baker* v. *Brown*, 10 Mo. 396; *Mar-
tindale* v. *Hudson*, 25 Mo. 422; *Parsons* v. *Nelson*, 19
Mo. 190.

HAYDEN, J., delivered the opinion of the court.

This is an action on nine notes, some of which were due-
bills and others in form negotiable promissory notes, made by
the defendant, and by the payee, one Henry Gambs, assigned
or indorsed to the plaintiff. For the purposes of this case
it may be admitted that the plaintiff received them all after
maturity. It appeared that Gambs had been public admin-
istrator of St. Louis County, and was a defaulter and
largely indebted upon his bond, on which the defendant
and three other persons were sureties. The defendant,
before the time when Gambs transferred these notes and

due-bills to the plaintiff, had paid about $10,000 on account of this indebtedness of Gambs. Gambs made the transfer to the plaintiff in trust for the benefit of all the sureties, including the defendant, the plaintiff giving no consideration for the indorsement, but receiving the paper to pay the debts of Gambs for which these sureties were liable. The sureties, by an arrangement among themselves, contributed an equal amount to pay judgments against them as sureties. After the indorsement of these notes and due-bills to the plaintiff by Gambs, the defendant paid a further sum of $13,000 as surety. These sums were in addition to $7,500 which the defendant had, before Gambs absconded, paid upon the notes and due-bills themselves, with which $7,500 the defendant was of course to be credited. The aggregate of the notes and due-bills was about $15,750. There was judgment for the defendant.

The doctrine of the commercial law of England, that the indorsee of an overdue negotiable bill or note takes it as against the maker, subject to the equities arising out of the bill or note transaction itself, but not subject to set-offs arising out of independent transactions between the indorser and the maker, has been adopted here, and such is now the law in Missouri. *Gullett* v. *Hoy,* 15 Mo. 399; *Unseld* v. *Stephenson*, 33 Mo. 163; *Arnot* v. *Woodburn*, 35 Mo. 99. The leading case is *Burrough* v. *Moss*, 10 Barn. & Cress. 558, and this has been extensively followed. As Baron Parke said in *Whitehead* v. *Walker*, 10 Mee. & W. 698 : " But a set-off is not an equity ; it is a mere collateral matter ; it is a right to set-off a cross-demand against the plaintiff's cause of action, which was introduced to prevent a multiplicity of actions." So, in the case at bar, the right which the defendant had was merely the right to set off as against Gambs, the payee, the demand of the defendant growing out of the collateral matter of the suretyship. It is true that when these obligations were indorsed to the plaintiff by Gambs there was an existing indebtedness of Gambs to

the defendant arising from the payment of the $10,000. So, in *Gullett* v. *Hoy*, *supra*, the defendants relied upon a set-off which was due to them from the payee before the latter's indorsement to Gullett. It was at one time thought that the indorsee would be affected by the set-off if he had notice of it at the time he took the bill. *Goodall* v. *Ray*, 4 Dowl. 76. But in *Whitehead* v. *Walker*, *supra*, it was held that notice of the set-off makes no difference, and that the true rule is that the indorsee of overdue negotiable paper is subject only to those equities which attach to the paper itself. Nor is it material that the indorsee gave no value for the paper, or that it was indorsed expressly to defeat the right of set-off. *Oulds* v. *Harrison*, 10 Exch. 572; Dan. Neg. Inst., sect. 725; Byles on Bills, *130.

It is, however, true that there may be an agreement that an existing demand in favor of the maker shall be set off against the paper in the hands of the indorsee, so that the latter would hold it as if the mere cross-demand were an equity. But the burden is upon the maker to show this, and to prove that, owing to the agreement, the rule of the commercial law does not apply. Upon this record we find no evidence of such an agreement. Gambs indorsed the paper to the plaintiff, who stands as a trustee to make the assets available for the sureties, one of whom he cannot favor at the expense of the others. If there was a common understanding among the sureties that the defendant, in contributing, should be allowed to set off his payments against the demands which were peculiar to him, the defendant may show this. The case must, however, be reversed, as the law governing it was not applied, and the facts will appear upon a new trial.

What has been said applies only to the notes which are negotiable by the laws of this State. Wag. Stats. 216, sect. 15; *Bailey* v. *Smock*, 61 Mo. 218. To the non-negotiable paper this peculiar doctrine of the commercial law does not apply. Such paper is governed, moreover, by the provi-

sions of our statute upon the subject of set-off, the second section of which provides that in actions on assigned accounts and non-negotiable instruments the defendant shall be allowed every just set-off or other defence which existed in his favor at the time he was notified of such assignment.

There is nothing in the point that the plaintiff, representing, for the purposes of this collection, all the sureties, cannot sue one of them. It is also obvious that it is not the office of this suit to settle the ultimate equitable rights of the sureties among themselves.

The judgment is reversed and the cause remanded, to be proceeded with according to this opinion. Judge BAKEWELL concurs; Judge LEWIS is absent.