ROSA ORTT, Appellant, v. CHRISTINA LEON-
HARDT et al., Respondents.

### St. Louis Court of Appeals, May 12, 1903.

**Will, Action to Establish:** TWO WILLS: FIRST WAS PRO-
BATED, THE LAST REJECTED: ATTESTATION, SUFFI-
CIENT: R. S. 1899, SEC. 4604, CONSTRUED.   In a suit to estab-
lish a will, the evidence showed that the testatrix made two wills
not quite a month apart; that they were both presented for probate
and the first was probated, while the last was rejected. Plaintiff
was the beneficiary in the last will and made out a clear prima
facie case that the testatrix was of sound mind and memory at
the time of making the will. It is contended by the defendant
that the will was not properly attested, the two witnesses which
attested it not having read the will and the testatrix refusing to
permit them to read it, although both understood that the paper
they were signing, was a will. *Held,* that under Revised Statutes
1899, section 4604, it was not essential that the witnesses should
know the contents of the will, so they understood that the in-
strument they were signing, was a will.

Appeal from St. Louis City Circuit Court.—*Hon. S.
P. Spencer,* Judge.

REVERSED AND REMANDED.

*L. Frank Ottofy* for appellant.

(1)   Section 4604, Revised Statutes 1899, does not,
of itself, require that the will should be published to the
witnesses, or that they should know what is the nature
of the instrument. Wyndham v. Chetewynd, 1 Burr.
421; Bond v. Seawell, 3 Burr. 1775; Wright v. Wright,
7 Bing. 457; White v. Trustees, 6 Bing. 310; Johnson
v. Johnson, 1 Crompt. & Mees. 140; Moodie v. Reid, 7
Taunt. 361; Tilden v. Tilden, 13 Gray 110; Hogan v.

Grosvenor, 10 Metc. (Mass.) 56; Linton's Appeal, 104 Pa. St. 228; Allen v. Griffin, 69 Wis. 529; Ela v. Edwards, 16 Gray 91; Eliot v. Eliot, 10 Allen 357. (2) The Missouri cases, with respect to publication, are clearly distinguishable. Withinton v. Withinton, 7 Mo. 589; Cravens v. Faulconer, 28 Mo. 19; Walton v. Kendrick, 122 Mo. 524; Odenwalder v. Schorr, 8 Mo. App. 467; Grimm v. Tittman, 113 Mo. 65; Hobart v. Hobart, 154 Ill. 616. (3) There is ample evidence here to go to the jury, under the later decisions of the Supreme Court. Craig v. Craig, 156 Mo. 358; Schierbaum v. Schemme, 157 Mo. 1; Martin v. Bowdern, 158 Mo. 379; Grimm v. Tittman, 113 Mo. 56.

*Rassieur & Buder* for respondents.

(1) Motions addressed to the trial court should be specific, and no reason not specified shall be urged in support of the motion. Vanstone v. Goodwin, 42 Mo. App. 39; Alexander v. Railroad, 54 Mo. App. 66. (2) When the evidence is of such character that the trial judge would have a plain duty to perform in setting aside the verdict as unsupported by the evidence, it is his duty and prerogative to interfere before submission to the jury, and direct a verdict for the defendant. Jackson v. Hardin, 83 Mo. 175; City of Mexico v. Jones, 27 Mo. App. 534; Reichenbach v. Ellerbe, 115 Mo. 588; Hite v. Railroad, 130 Mo. 132; Rottmann v. Pohlmann, 28 Mo. App. 399. (3) Where there is no evidence to support the issue, the court may give a peremptory instruction in a will contest as well as in any other case. Maddox v. Maddox, 114 Mo. 35; McFadin v. Catron, 138 Mo. 197. (4) The statute requires signature of decedent and also that it be attested by two or more witnesses, etc. R. S. 1899, sec. 4604. (5) To "attest" is to know that it was published as such; to subscribe simply is the act of signing. Anderson's Dictionary of Law, "attest" p. 91; Swift v. Wiley, 1 B.

Mon. 117; In re Downie's Will, 42 Wis. 76.   (6) Some declaration by the testator that the paper was his will, and a communication made by him to the witnesses that he desires them to attest it as such, is necessary.   Ex parte Beers, 2 Bradf. 163; Odenwalder v. Schorr, 8 Mo. App. 453; Mundy v. Mundy, 15 N. J. Eq. 290; Cravens v. Faulconer, 28 Mo. 21; Grimm v. Tittman, 113 Mo. 56; Walton v. Kendrick, 122 Mo. 504.

BLAND, P. J.—The facts are that Barbara Rosebrock, of the city of St. Louis, on the fifteenth day of May, 1900, made a will devising all of her property, both real and personal, to Christina Leonhardt, her servant girl.   Defendant Gottschalk was named as executor in this will.   On the fifth day of June, 1900, Barbara Rosebrock made another will in which she gave and devised to Christina Leonhardt certain personal property.   All the residue of her estate both personal and real she devised to her niece, Rosa Ortt, and named said Rosa Ortt as executrix of said will.   The testatrix died July 19, 1900.   Both wills were presented to the probate court of the city of St. Louis for probate. The one dated May 15th was admitted to probate, the one of June 5th was rejected.   This suit was brought in the circuit court to establish the will of June 5th.   It was agreed by both parties at the trial that the only issue to be tried was whether or not the will of June 5th was the last will and testament of Barbara Rosebrock. This will did not purport to revoke the will of May 15th.

At the close of all the evidence the court peremptorily instructed the jury to find the issues for the respondent.   From this ruling Rosa Ortt appealed.

There were two attesting witnesses to the will of June 5th.   Both testified that their signatures to the attesting clause of the will were genuine and that they signed the same at the request of the testatrix and in her presence after seeing her sign her name to the will, but they did not actually know that it was a will, but

supposed that the instrument was a will; that they knew the testatrix and had known her for several years; that at the time she signed the will she acted unusual and was in great pain, and both expressed the opinion that she was not competent at the time to make a will. These witnesses were evidently favorably disposed towards respondents.

For many years the testatrix had been a sufferer from a cancer, which caused her death. During the last eight or ten months of her illness the cancer caused her great pain and suffering, and her physician testified that he prescribed morphine to relieve the pain and that as time went on and she became more inured to the drug the dose had to be increased to produce the desired effect; that he did not see her very often during the months of May and June prior to her death, but visited her several times in each of those months; that he never noticed any indication that her mind had failed or that it had become impaired by the use of the morphine, but that he did not examine her specially with a view of ascertaining her mental condition, and never observed anything to indicate any impairment of her mind.

Barbara Ortt, a sister of the testatrix, testified that she saw her about three weeks prior to her death when she made her a visit, and that she had visited her about once a week prior to that time; that she was very ill but was sane and understood everything that was said.

Appellant testified that she visited the testatrix on May 19, 1900, and stayed with her for several hours and had a good deal of conversation with her (which conversation is in the abstract); that at that time she understood everything that was said and talked sensibly; that she visited her again on June 4th and detailed quite a lengthy conversation she had with her showing that at that time the testatrix was of sane mind, understood her condition and knew she could not live long and made some sensible requests in respect to her burial.

There is countervailing evidence in the record, evi-

dence which tends to show that the testatrix might have been crazed at the time she made the will of June 5th by the quantity of morphine that had been administered to her, but there is no direct evidence of that fact and the circumstances from which such an inference might be drawn were proven mostly, if not entirely, by witnesses favorably disposed to respondents.

Appellant made out a clear prima facie case that the testatrix was of sound mind and memory when she executed the will of June 5th. But it is contended that appellant failed to show that the will was properly attested. The two attesting witnesses swore that they were sent for by the testatrix; that they saw her sign the will and that they signed it as witnesses in her presence and at her request, but that the testatrix refused to tell them what the instrument was; that one of them asked her what it was that she wanted them to sign as witnesses and she replied: "It is none of your business," and put her hand over the paper to prevent it being read. One of the attesting witnesses testified that he saw a line or two of the attesting clause and saw the word "will" written therein and both testified that they understood that they were signing the paper as witnesses to a will.

The statute, section 4604, Revised Statutes 1899, provides as follows:

"Every will shall be in writing, signed by the testator, or by some person, by his direction, in his presence; and shall be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator."

It was not essential that the witnesses should know the contents of the will. They understood the instrument which they witnessed to be a will, they saw it signed by the testatrix and they signed their names as attesting witnesses to it in her presence and at her request. It seems to us this fills the requirements of the statute. Martin v. Bowdern, 158 Mo. 379. The pur-

pose of the statute is to require proof of the execution of the will. Craig v. Craig, 156 Mo. 358. This proof was made by the number of witnesses required by the statute and we think the case should have been submitted to the jury.

The judgment is reversed and the cause remanded. *Reyburn* and *Goode, JJ.,* concur; the latter in a separate opinion.

### SEPARATE OPINION.

GOODE, J.—In view of our statutes and decisions relating to the execution of wills, it seems to be necessary to a valid attestation that the witnesses know what the instrument is. The rule is to the contrary in most States, provided the witnesses saw the testator attach his signature, as the witnesses to the disputed will in this case did. When a will is to be proved, the witnesses are required to make oath that the testator signed the writing *as his last will,* which of course presupposes knowledge by the affiants of the nature of the instrument; and the decisions give that interpretation to the statutes. Cravens v. Faulconer, 28 Mo. 19; Grimm v. Tittman, 113 Mo. 56; Walton v. Kendrick, 122 Mo. 504; Odenwalder v. Schorr, 8 Mo. App. 453.

The evidence in this case was of such a character that the jury should have weighed it on the question of the execution of the writing in controversy in the mode needed to make it formally a will. The witnesses were two brothers, named Gazzolo, and their testimony in connection with the surrounding circumstances would well support a finding that they were cognizant the document they signed was the decedent's last will and that they were called on to attest it as such. Testimony given by a subscribing witness against the validity of a will is looked on with suspicion. 29 Ency. Law (1 Ed.), 184, and notes. Andrew Gazzolo at first swore positively to reading the attestation clause, which dis-

closed the nature of the instrument.    This part of his testimony was as follows:

"Q.   Now don't you know that you read a portion of the attestation clause of the will before you signed it?   A.   Well, I observed just about there myself; yes, sir; I did; that was what made me think it was a will; on account of her being sick and I just looked at it.

"Q.   You saw this part which says, 'We the undersigned, witnesses, do hereby attest this will?'   A. I believe I did see that portion.

"Q.   You saw that portion which says, 'We the undersigned witnesses do hereby attest the within and foregoing will of Barbara Rosebrock the within named testatrix, etc?'   A.   Yes, sir; I may have."

The foregoing and other testimony adapted to prove the witnesses were informed that it was the execution of a will they were attesting, was too strong to be held for naught and withdrawn from the jury's consideration.   The deceased signed the document in the presence of the Gazzolos and requested them to sign as witnesses after having sent for them for that purpose as Christina Leonhardt swore.